CARAWAY, J.
 

 |, The plaintiff instituted a suit against the City of Shreveport and a police officer which included claims that the officer utilized excessive force in effecting an arrest of plaintiff and injured her. Plaintiff did not respond to a routine traffic stop and continued driving in flight from the officer to her place of employment before stopping. The trial court denied plaintiffs claims and she appeals. Finding no manifest error in the ruling, we affirm.
 

 Facts
 

 On the morning of August 4, 2005, while traveling north on a Shreveport street, Shreveport Police Officer Brad Sotak observed through an open car window that Latisha Hall, the driver of a southbound vehicle, was not wearing a seatbelt. Officer Sotak had been with the Shreveport police department for five years. He turned his vehicle around and got behind Hall’s vehicle which turned west on a major Shreveport thoroughfare. It was then that Officer Sotak activated his lights. When Hall failed to stop her vehicle, Officer Sotak activated his siren and horn. Hall maintained normal speed for approximately one mile until she pulled into the parking lot of her place of employment and stopped there. During the pursuit, Hall activated her right turn signal. Three co-employees of Hall who witnessed the events testified at trial.
 
 [1]
 

 
 *421
 
 Officer Sotak testified that at the time of the eventual stop of the vehicle he feared for his safety because of Hall’s actions in disregarding his pursuit. He drew his weapon for officer safety reasons. Hall remained in |2her vehicle until Officer So-tak asked her to step out. She got out of the car with her hands above her head as shown by the videotape of the incident. Officer Sotak asked Hall to turn and not face him as he exited his vehicle with his weapon drawn. Hall acted inconsistently in complying with Officer Sotak’s command; she turned away from him but twice turned around to face him.. Hall claimed that she was confused over Officer Sotak’s instruction to her.
 

 Officer Sotak testified that he intended to arrest Hall for flight from an officer and the seat belt violation. The video reveals that after Hall exited the vehicle and stood beside it, Officer Sotak repeatedly gave the command: “Get down on the ground.” Each such command was loud but did not reflect anger or any lack of self control on the officer’s part. In fact, he concluded the command with “Ma'am” at times. Officer Sotak remembered Hall saying something in response that he could not understand.
 

 In his police report, Officer Sotak noted as follows:
 

 The reason I wanted the suspect to go to the ground and not face me was for many reasons. The suspect was a large woman and out weighed me by quite a bit; I had to follow the suspect for approximately 1-1.5 miles; I did not know if the car was stolen, I did not know if there were guns or drugs in the car; I could not tell if she was alone in the car; When she exited the car I actually thought she was a male; Her repeated refusal to comply with my requests; Her resisting handcuffing. All these unknowns along with her refusal of requests and length of flight caused me to be very concerned for my safety. Also at the time of my approaching her I did not know and could not tell if her person was armed. My actions of helping her to the ground was as much for her safety as it was for mine.
 

 After several more commands for Hall to get to the ground, Officer Sotak threatened to tase her. When she persisted in resisting his command, |8Officer Sotak, who was 6'2" and weighed 215 pounds, holstered his gun and approached Hall, a 5'9", 300-pound woman. Officer Sotak performed a straight arm lock takedown which caused Hall to lose her balance. At trial, Officer Sotak testified that at the police academy, he was trained regarding the types of force which include presence, verbal use of force, soft empty hand, hard empty hand, impact, less lethal and deadly force. Officer Sotak testified that he received annual training on each type of force. He stated that when Hall did not respond to presence and verbal force, he utilized the next level of force, open empty hand, which includes that straight arm lock takedown. Officer Sotak testified that he utilized the minimal amount of force necessary to control the situation in accordance with the training that he had received.
 

 After Hall was on the ground, Officer Sotak placed his right knee on her left back. He had difficulty handcuffing Hall because her right hand was under her body. After he “let up slightly” Hall pulled her right arm out and Officer Sotak handcuffed her and helped her to her feet. Officer Sotak recovered a pocket knife from Hall. He placed Hall in the patrol car where she complained of arm pain. Officer Sotak called the fire department to treat Hall’s injuries. The following day, Hall received treatment at a local hospital for a shoulder contusion, backache and
 
 *422
 
 joint pain. On August 26, she saw a chiropractor with complaints of low back and neck pain and numbness in the right hand.
 

 Hall filed a complaint with the Shreveport Police Department against Officer So-tak. The findings and recommendations of the internal ^investigation by the Internal Affairs Bureau, which were introduced into evidence, determined Hall’s claim to be unfounded. Two of the three officers who comprised the Internal Affairs Bureau concurred in the unfounded finding with the following comments:
 

 Captain Cheryl Jeter
 
 concurred
 
 with the findings of Lieutenant Joey Hester. Captain Jeter wrote “Officer Sotak needs experience as his guide. He needs to learn when to ‘disengage’ and shift tactics based upon his experience in such situations.”
 

 Captain [Steven] Floyd
 
 concurred
 
 with the findings of Captain Cheryl Jeter. Captain Floyd wrote “I believe that this is a situation where teaching, coaching, and counseling would be in order to ensure that the officer understands the different levels of tactics that need to be used in situations. While conducting himself strictly by the training he received at the academy, he is a young officer and had not yet learned to adjust himself to the circumstances of the situation. I believe that with some coaching and teaching, the officer will improve his performance in the future.”
 

 On February 17, 2006, Hall instituted suit against Officer Sotak, the City of Shreveport and the Shreveport Chief of Police (hereinafter “defendants”) seeking in part damages for injuries she received from Officer Sotak’s alleged use of excessive force.
 
 [2]
 
 After a trial in which Officer Sotak, Hall and numerous eyewitnesses testified, the trial court took the matter under advisement and ultimately rejected Hall’s claims. Hall has appealed the dismissal of her claim regarding Officer So-tak’s use of excessive force. She argues that the evidence shows that Officer So-tak’s “over aggressive adherence” to his training techniques amounted to excessive force. Hall |fialso argues that the trial court erred in failing to assess any fault to Officer Sotak.
 

 Discussion
 

 The Louisiana Supreme Court has analyzed excessive force claims under the aegis of the general negligence law of Louisiana which employs a duty-risk analysis.
 
 Stroik v. Ponseti,
 
 96-2897 (La.9/9/97), 699 So.2d 1072. Under this analysis, the plaintiff must prove: (1) the conduct in question was a cause-in-fact of the resulting harm; (2) defendant owed a duty of care to plaintiff; (3) the requisite duty was breached by the defendant; and (4) the risk of harm was within the scope of the protection afforded by the duty breached.
 
 Stroik, supra; Mathieu v. Imperial Toy Corp.,
 
 94-0952 (La.11/30/94), 646 So.2d 318.
 

 The duty of reasonableness is owed by a police officer whether making an arrest or approaching a subject prior to disarming him or her. In effectuating an arrest, an officer is required to approach and take into custody an individual whom the officer has probable cause to believe has committed or is committing a crime.
 
 Mathieu supra; Kyle v. City of New Orleans,
 
 353 So.2d 969 (La.1977). Police offi
 
 *423
 
 cers have a duty to act reasonably in effecting an arrest, and the force used must be limited to that required under the totality of the circumstances.
 
 Id.
 
 The reasonableness of an officer’s use of force depends upon the totality of the facts and circumstances in each case. A court evaluates the officer’s actions against those of ordinary, prudent, and reasonable persons placed in the same |f,position as that possessed by officers, with the same knowledge as that possessed by the officer at the time of the incident.
 
 Id.
 

 One of the factors taken into consideration when determining whether a police officer used reasonable or unreasonable force is whether the plaintiff was intoxicated, belligerent, offensive, or uncooperative.
 
 Evans v. Hawley,
 
 559 So.2d 500 (La.App. 2d Cir.1990),
 
 writ denied,
 
 563 So.2d 1156 (La.1990). In determining whether the officer acted reasonably under the circumstances, the following factors should be considered: (1) the known character of the arrestee; (2) the risks and dangers faced by the officer; (3) the nature of the offense involved; (4) the chance of the arrestee’s escape if the particular means are not employed; (5) the existence of alternative methods of arrest; (6) the physical size, strength, and weaponry of the officer compared to the arrestee; and (7) the exigency of the moment.
 
 Stroik, supra.
 
 The existence of other available alternative methods does not, in and of itself, render the method chosen unreasonable.
 
 Mathieu, supra.
 
 This reasonableness test is based upon the Fourth Amendment to the United States Constitution as well as La.C.Cr.P. art. 220 which provides:
 

 A person shall submit peaceably to a lawful arrest. The person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained.
 

 This reasonableness test answers the question of whether or not the officer breached the duty he owed to the plaintiff. The degree of force employed is a factual question. Thus, the trial court’s finding is entitled to great weight.
 
 Kyle, supra.
 

 |7The crime of flight from an officer is defined in La. R.S. 14:108.1 in relevant part as follows:
 

 A. No driver of a motor vehicle or operator of a watercraft shall intentionally refuse to bring a vehicle or watercraft to a stop knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver has committed an offense. The signal shall be given by an emergency light and a siren on a vehicle marked as a police vehicle or marked police watercraft.
 

 B. Whoever commits the crime of flight from an officer shall be fined not less than one hundred fifty dollars, nor more than five hundred dollars, or imprisoned for not more than six months, or both.
 

 If an officer makes a lawful arrest of an individual, that officer is authorized, without more, to search the arrestee and his wingspan, or lunge space for weapons and evidence.
 
 Chimel v. California,
 
 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). In Louisiana, some Title 32 traffic offenses require the issuance of citations, some allow arrests.
 
 State v. Stoutes,
 
 43,181 (La.App.2d Cir.4/2/08), 980 So.2d 230.
 

 In
 
 Nelson v. City of Shreveport,
 
 40,494 (La.App.2d Cir.1/27/06), 921 So.2d 1111,
 
 writs denied,
 
 06-0453 (La.5/5/06), 927 So.2d 313, 06-0600 (La.5/5/06), 927 So.2d 317, a retired police officer filed suit for excessive force arising from his arrest by a
 
 *424
 
 Shreveport police officer. The plaintiff had stopped his car in a shopping center parking lot to talk on his cell phone at approximately 9:00 p.m. and was discourteous to the officer. The court found that the officer’s “delivery of multiple strikes with a PR24” to the back of the suspect’s thighs and the use of a “pain compliance technique” to get the suspect into the police car amounted to excessive force | swhen the officer had no reason to arrest the retired officer and was only justified initially in making an investigatory stop.
 

 In
 
 Patton v. Self,
 
 06-1029 (La.App. 3d Cir.3/7/07), 952 So.2d 874, police officers observed the driver of a vehicle driving off of the right edge of the roadway and crossing the center line. The officers pursued the vehicle with lights activated. The driver of the vehicle pulled over but did not exit the vehicle. The officers approached the vehicle and detected the smell of alcohol coming from the driver who had slurred speech and bloodshot eyes and continually asked why she had been stopped. The officers continued to verbally instruct the driver to exit the vehicle but she rolled her window back up to a gap of three inches, locked the doors and remained inside. The officers became more aggressive in their demands for plaintiff to exit the vehicle. One of the officers sprayed pepper spray through the gap of the window. The driver eventually unlocked the door and was grabbed by the officers, forced to the ground face down and arrested for driving while intoxicated, failure to drive on the right side of the road, resisting an officer and running a red light. The driver filed suit alleging excessive force which caused her injuries to her neck, back, hip, thigh, knee and eye. The court found that the officers used excessive force based upon the video depiction of the events which failed to show erratic driving by the driver, that she crossed the center line or that the driver ran a red light. The video also showed that the driver immediately pulled over when the police activated their lights. Thus, the court concluded that the officers had no known reason to believe the driver was dangerous. Further, |flthe court determined that the officers gave the driver no time to exit the vehicle, but forcibly removed her and took her to the ground even when the driver presented little danger of harm or escape.
 

 In
 
 Labauve v. State of Louisiana,
 
 618 So.2d 1187 (La.App. 3d Cir.1993),
 
 writ denied,
 
 624 So.2d 1235 (La.1993), the court found that state troopers used excessive force in arresting a 76-year-old man by forcing him down on to the ground to handcuff him for drunk driving. The court concluded that the officer was stronger than the 76-year-old man and could have avoided putting him on the ground to effectuate the arrest for a nonviolent offense. The driver claimed that as he reached into his wallet to produce his driver’s license, the officer grabbed him by the arm and forcibly pushed him against the hood of the police vehicle. When the driver uttered an obscenity at the officer, he spun the driver around, picked him up and slammed him head first onto the concrete pavement causing extensive damage to the driver’s nose and face. The officer countered claiming that the driver refused to give him his license and tried to walk away when he was told he was going to be placed under arrest. In the absence of a videotape of the incident, the trier-of-fact accepted the plaintiffs version of the arrest and awarded damages.
 

 In
 
 Corkern v. Smith,
 
 06-1569 (La.App. 3d Cir.6/6/07), 960 So.2d 1152,
 
 writ denied,
 
 07-1803 (La.1/25/08), 973 So.2d 754, the court determined that a state trooper utilized excessive force in arresting an individual for failure to stop. The driver of the vehicle, who had been released three days earlier from the hospital, received a
 
 *425
 
 frantic phone call | ulfrom his girlfriend who was injured when she attempted to separate fighting dogs. The driver traveled at an excessive speed to assist his girlfriend and was pursued by a state trooper. When the driver pulled into his girlfriend’s driveway, the state trooper approached him with a drawn gun. The driver attempted to explain the situation, but the trooper walked up to him, grabbed his left arm at the site of his injury, threw him to the ground and handcuffed him. The driver was booked and released, but by the following morning, the surgical site on his left arm was irreparably damaged. The video showed that when the driver exited the vehicle, his hands were in clear view of the officer; the young slightly built man made no threatening moves and tried to explain the situation to the officer who did not speak to the driver, but instead threw him to the ground.
 

 Notably, in this appeal, Hall does not assert that Officer Sotak lacked probable cause to arrest her for her flight from the officer or that under the circumstances he did not have the right to physically restrain her in effectuating the arrest and to take her into custody. She argues, however, that the escalation of the officer’s actions from his initial verbal commands to his directive for Hall to go to the ground was unreasonable. Her argument thus questions Officer Sotak’s decision to order her to the ground which led to the force used against her and to her alleged injuries. Additionally, the actual physical force with which Officer Sotak got Hall to the ground is questioned in Hall’s assignment of error. Officer Sotak claims that he “walked” Hall “down to the ground so she wouldn’t slam down on the ground.” Hall testified that Officer Sotak “pushed [her] to the ground” |nand that she “fell to the ground” injuring her lower back, upper shoulders and neck.
 

 Under La.C.Cr.P. art. 220 and the factors enumerated in
 
 Stroik, supra,
 
 we will first review the reasonableness of Officer Sotak’s manner of detention of Hall by ordering her to the ground. Because of Hall’s lengthy flight from the officer’s traffic pursuit, the nature of the offense had become more serious than a mere routine traffic stop. This was not a citation-only traffic offense, as the flight from the officer which is proscribed in the Louisiana Criminal Code allowed for an arrest and the taking of Hall into custody. Additionally, given the exigency of the moment, the officer had not yet determined whether other more dangerous crimes were involved and had served as the reason for the flight from the officer. Hall’s vehicle had heavily tinted glass, and Officer So-tak’s suspicion and fear of another party or a weapon being in the vehicle were warranted. From the video, the officer’s manner of addressing Hall as she exited the car reflected this uncertainty of the situation and his fear; and to the contrary, it did not reflect maliciousness or hostility toward an unruly driver by an angry officer. This uncertainty of the extent of the criminal activity was made more confusing by Hall’s erratic actions and speech as she exited the automobile. Her physical size and strength also were significant considerations for the officer. While there may have been an alternative method of arrest and detention, short of ordering her to the ground, .the officer’s chosen method under the facts to secure the situation and ensure the officer’s safety cannot be said to be unreasonable.
 

 112Concerning the force with which Hall fell to the ground, the videotape of the incident shows the parties’ actions outside their vehicles after Hall’s automobile was stopped. The view from the dash camera nevertheless was partially blocked by the back half of Hall’s automobile as she stood
 
 *426
 
 beside it after exiting. As Officer Sotak began the takedown maneuver grabbing Hall’s arm from behind, the back panel of the automobile and its roof prevented the view of what happened as the parties’ downward movement began. The recorded tape to that point, however, shows Officer Sotak’s repeated instruction to Hall and the force of his action at the beginning of the maneuver. The video to that point does not indicate that Hall was thrown to the ground or that Officer Sotak’s actions were otherwise unreasonable. The audio of the parties’ struggle on the ground does not reveal any scream of pain from Hall or inappropriate language from Officer Sotak giving any indication of excessive force used in the maneuver. After the handcuffs were applied, the video shows that Hall immediately was helped up to her feet. She was not then complaining of pain.
 

 The trial court as the trier-of-fact heard the testimony of the parties and eyewitnesses of the force Hall received as she went to the ground and out of view of the camera. From the perspective of Hall’s fellow employee eyewitnesses, they did not understand the necessity for the takedown and handcuffing of their friend. Officer Sotak did not have that understanding of the situation as reviewed above. Accordingly, from our review of all the testimony and the videotape, we find that the trial court could conclude that 11sonly a reasonable amount of force was applied by the officer as he attempted to arrest Hall and secure the situation for his further investigation. In comparison to the other rulings of officer misconduct reviewed above, the circumstances of this case and Officer So-tak’s actions throughout the entire incident allow for the trial court’s determination that excessive force was not used in the arrest.
 

 Conclusion
 

 For the foregoing reasons, we affirm the trial court. Costs of this appeal are assessed to plaintiff.
 

 AFFIRMED.
 

 [1]
 

 . All three witnesses testified that they thought Officer Sotak aggressively took Hall to the ground.
 

 [2]
 

 . Hall raised various other claims including claims of negligent hiring and training and a 42 U.S.C. § 1983 claim. Cross motions for summary judgment were filed by Hall and the defendants. The trial court denied Hall's and partly granted defendants’ summary judgment. As a result, the Shreveport Chief of Police was dismissed from the suit. The court also dismissed all of Hall's claims except the state law tort claims of battery, excessive force and intentional infliction of emotional harm.