WILLIAMS, J.
11 Plaintiff, Darlene Atkins, appeals a trial court judgment granting a motion for involuntary dismissal in favor of defendant, Officer W. Willis. For the following reasons, we affirm.
FACTS
On April 8, 2005, at approximately 4:40 p.m., Shreveport police officer Wyle Willis was patrolling the Cedar Grove area of Shreveport, Louisiana in a marked police vehicle. During his patrol, Officer Willis observed 12-year-old Dillion Freeman (“Dillion”) and another person operating “minibikes” (electric scooters) on a city street. Officer Willis testified that he attempted to conduct a traffic stop for the following reasons: (1) he believed the individuals riding the minibikes were not of legal driving age; (2) he believed the minibikes were not “road-approved” vehicles; and (3) the individuals were not wearing helmets. The officer stated that he directed the individuals to stop; however, they increased their speed and fled. Officer Willis testified that he activated the lights and sirens of his patrol car, but the individuals continued to ride for several blocks. The un-named person turned onto a side street, and Officer Willis continued to pursue Dillion. Dillion finally came to a stop in the yard of his grandmother’s house, where, according to Officer Willis, a “large crowd” of people were gathered outside. Officer Willis testified that when he attempted to take Dillion into custody, “the crowd became immediately hostile” and at least two individuals “grabbed at me and pushed at my chest[.]” He stated, “[A]t that time, for my safety, I pulled [Dillion] away from the crowd and to the front of my police car.”
*328 laOnce Officer Willis activated the lights and sirens of the police cruiser, the vehicle’s video camera automatically began recording the incident. The videotape was introduced into evidence at the trial and showed Dillion’s flight and Officer Willis’ pursuit. Dillion ran two stop signs during the chase. Once the police vehicle came to a stop in front of the home of Dillion’s grandmother, neither Dillion nor the officer was initially in view of the camera. However, someone, presumably Dillion, could be heard screaming, “He was chasing me; he was chasing me.” Other members of the crowd were heard yelling loudly. Officer Willis returned in view of the camera with Dillion in tow. The officer was seen grabbing Dillion by the arm and walking him to the front of the police car. Dillion repeatedly pulled away, and as Officer Willis attempted to place Dillion in handcuffs, Dillion struggled against the officer’s grasp. Dillion continued to resist, so Officer Willis forced Dillion to the ground. Several adults approached Officer Willis, and the officer placed his knee in Dillion’s back to secure him, removed his Taser and ordered the crowd to “step back” into the yard. After the officer gave it several orders to “step back,” the crowd finally retreated. However, one woman continued to approach Officer Willis and Dillion.
Several eyewitnesses to the incident testified at trial. However, the testimony of the witnesses was inconsistent. For example, some witnesses testified that Officer Willis “dragged” Dillion across the street and “threw” him to the ground. At least one witness testified that the officer “walked” Dillion to the front of the police car. Some witnesses testified that Officer IsWillis held a gun to Dillion’s head and threatened to shoot him. However, the videotape revealed that the officer drew his Taser, not his gun, and never threatened to shoot Dillion.
On April 7, 2006, plaintiff (Dillion’s mother) filed suit on behalf of Dillion and plaintiffs minor daughter, Damicqueletta Johnson; named as defendants were the city of Shreveport (“the City”) and Officer Willis, individually and in his “official capacity.” Plaintiff alleged that Officer Willis used excessive police force, and Dillion suffered “psychological trauma[,] injury to his knee[,] chest pains[,] back pains[,] embarrassment and humiliation” as a result of the officer’s conduct. Plaintiff also alleged that her minor daughter witnessed the incident and suffered “mental trauma” as a result.
Prior to trial, both parties moved for summary judgment. The trial court denied plaintiffs motion. The court partially granted defendants’ motion, dismissing all claims asserted on behalf of plaintiffs minor daughter and all claims against the City. The court denied defendants’ motion with regard to Dillion’s claims against Officer Willis. The matter proceeded to trial with Officer Willis as the sole defendant.
A bench trial was held on October 27, 2009. After plaintiff presented her evidence, Officer Willis moved for involuntary dismissal, pursuant to LSA-C.C.P. art. 1672(B). The trial court granted the motion, stating:
It is clear to the Court that the officer was acting appropriately when he tried to apprehend [Dillion]. It is clear to the Court that [Dillion] was doing his darnedest [sic] to flee ... and to get away from him. It is clear to the Court that [Dillion] was struggling with the officer and trying to get away from him after the officer had h gotten ahold of him. It is clear to the Court the officer had very reasonable cause to think he was being threatened on the street. It is clear to the Court that a number of the witnesses testified falsely about the *329 distance they were from the policeman, about following the policeman across the street. It is clear to the Court the officer used minimal force. This case borders, I think, on being frivolous. Anyone can see the video tape[.]
[[Image here]]
And I might also remark as well [that] I did review the evidence — the documentary evidence that was placed before the Court. This is the first time in close to 12 years that I’ve ever seen a medical report that used the term ‘completely normal....’ [I]t appears to me to be an effort to communicate that there [was] absolutely nothing wrong with this person when he presented at the hospital.
The court revoked plaintiffs informa pau-peris status and ordered her to pay court costs. Plaintiff appeals.
DISCUSSION
Plaintiff contends the trial court erred in granting defendants’ motion for involuntary dismissal. Plaintiff argues that she met her burden of proving that Officer Willis used excessive force and that Dillion was injured during the incident.
A motion for involuntary dismissal at the close of the plaintiffs evidence is permissible after a bench trial when, based upon the facts and law, the plaintiff has failed to show a right to relief. LSA-C.C.P. art. 1672(B). A motion for involuntary dismissal requires the trial court to evaluate all of the evidence presented by the claimant and render a decision based upon the preponderance of the evidence. Lowe v. Skyjacker Suspensions, 45,058 (La.App.2d Cir.3/3/10), 32 So.3d 340; Gray v. City of Monroe, 41,087 (La.App.2d Cir.5/17/06), 930 So.2d 1148. An appellate |ficourt should not reverse an involuntary dismissal in the absence of manifest error; and, there is no manifest error if there is a reasonable factual basis for the finding of the trial court. Id.
Recently, in Hall v. City of Shreveport, 45,205 (La.App.2d Cir.4/28/10), 36 So.3d 419, this Court reviewed the relevant jurisprudence with regard to a claim of excessive police force as follows:
The Louisiana Supreme Court has analyzed excessive force claims under the aegis of the general negligence law of Louisiana which employs a duty-risk analysis. Under this analysis, the plaintiff must prove: (1) the conduct in question was a cause-in-fact of the resulting harm; (2) defendant owed a duty of care to plaintiff; (3) the requisite duty was breached by the defendant; and (4) the risk of harm was within the scope of the protection afforded by the duty breached.
The duty of reasonableness is owed by a police officer whether making an arrest or approaching a subject prior to disarming him or her. In effectuating an arrest, an officer is required to approach and take into custody an individual whom the officer has probable cause to believe has committed or is committing a crime. Police officers have a duty to act reasonably in effecting an arrest, and the force used must be limited to that required under the totality of the circumstances. The reasonableness of an officer’s use of force depends upon the totality of the facts and circumstances in each case. A court evaluates the officer’s actions against those of ordinary, prudent, and reasonable persons placed in the same position as that possessed by officers, with the same knowledge as that possessed by the officer at the time of the incident.
One of the factors taken into consideration when determining whether a police officer used reasonable or unreasonable force is whether the plaintiff was *330 intoxicated, belligerent, offensive, or uncooperative. In determining whether the officer acted reasonably under the circumstances, the following factors should be considered: (1) the known character of the arrestee; (2) the risks and dangers faced by the officer; (3) the nature of the offense involved; (4) the chance of the arrestee’s escape if the particular means are not employed; (5) the | ^existence of alternative methods of arrest; (6) the physical size, strength, and weaponry of the officer compared to the arrestee; and (7) the exigency of the moment. The existence of other available alternative methods does not, in and of itself, render the method chosen unreasonable. This reasonableness test is based upon the Fourth Amendment to the United States Constitution as well as La. C.Cr.P. art. 220 which provides:
‘A person shall submit peaceably to a lawful arrest. The person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained.’
This reasonableness test answers the question of whether or not the officer breached the duty he owed to the plaintiff. The degree of force employed is a factual question. Thus, the trial court’s finding is entitled to great weight.
Id. at 422-23 (internal citations omitted).
LSA-R.S. 14:108.1 provides, in pertinent part:
A. No driver of a motor vehicle or operator of a watercraft shall intentionally refuse to bring a vehicle or watercraft to a stop knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver has committed an offense. The signal shall be given by an emergency light and a siren on a vehicle marked as a police vehicle or marked police watercraft.
B. Whoever commits the crime of flight from an officer shall be fined not less than one hundred fifty dollars, nor more than five hundred dollars, or imprisoned for not more than six months, or both.
[[Image here]]
In the instant case, plaintiff has never asserted that Officer Willis lacked reasonable suspicion to stop Dillion for traffic violations. Nor has |7plaintiff disputed that Officer Willis had probable cause to arrest Dillion for flight from the officer, or that, under the circumstances, the officer did not have the right to physically restrain Dillion in effectuating the arrest and to take Dillion into custody. However, plaintiff alleged in her petition that Officer Willis acted unreasonably in the following regards: (1) pursuing Dillion “at a high rate of speed;” (2) “grabbing” Dillion and “dragging” him to the front of the police car; (3) removing his revolver and placing it to Dillion’s head and threatening to shoot Dillion;[1] (4) “throwing” Dillion to the ground and placing his knee in Dil-lion’s back.
The reasonableness of Officer Willis’ actions was hotly contested at trial. Officer Willis testified that he pursued Dillion until he arrived at a residence where a “large crowd” of people were standing outside. He stated that the crowd “became hostile” when he attempted to effectuate the ar *331 rest; therefore, for his safety, he decided to remove Dillion from the crowd and attempted to handcuff him in front of the police car.
Dillion testified that he was riding his minibike and “panicked” when Officer Willis attempted to stop him. Dillion also testified that he proceeded to the driveway of his grandmother’s house, where he “was grabbed by one of my arms and dragged to the street, out of the yard.” Dillion stated that Officer Willis threw him to the ground, placed his knee in his back and threatened to shoot him.
Plaintiff testified that Officer Willis “jumped out” of the police car, |8“grabbed Dillion off the bike and drug [sic] him across the street.” She also stated that the officer “threw [Dillion] to the street on the concrete in front of the police car [and] placed his knee into [Dillion]’s back[.]” Plaintiff further testified that “the crowd” began to yell at the officer, so the officer “pulled a gun, and pointed it at the crowd and told us if we don’t get back he was going to shoot him and he placed the gun to [Dillion’s] head.” She later admitted that the weapon the officer exposed was not a gun.
Ray Prelow testified that he was outside the residence when Dillion, pursued by Officer Willis, arrived. Prelow stated that Officer Willis “grabbed” Dillion and “walked him” to the front of the police car. Prelow also testified that the officer pulled his taser and told members of the crowd to “get back.” At one point, Prelow testified that the taser was pointed at Dillion’s back; then he stated that it was pointed at Dillion’s head. Prelow admitted that some members of the crowd were hostile and threatened to harm the officer. He stated, “Everybody was angry and upset the way [Officer Willis] handled the whole situation.”
Donald Griffin also witnessed the incident. Griffin stated that Officer Willis “grabbed [Dillion] before he got off his moped and drug [sic] him across the street and put his knee in his back and pulled his gun out and told [plaintiff] and her mother to holdup and he — he put his gun — well, he had it out and it just right by the young kid’s head, you know.... And he told the rest of the people to get back, to get back.” When asked by the court if he was sure Officer Willis drew a pistol, Griffin stated, ‘Yeah, it was a pistol.”
Mary Atkins, Dillion’s grandmother, also testified that she witnessed |9the incident. She stated that Officer Willis held “a gun” to Dillion’s head.
After a thorough review of this entire record, including the transcript of the testimony and the videotape, we find that the trial court did not commit manifest error in concluding that Officer Willis’ actions were “reasonable” and “appropriate.” As the trial court noted, the testimony of the witnesses was contradicted by the videotape of the incident. The videotape depicted Dillion’s flight, during which he recklessly disregarded two stop signs. The videotape also showed that Dillion pulled away from Officer Willis’ grasp several times, and he continued to struggle with the officer after the officer was holding onto his arms. When the officer attempted to place Dillion in handcuffs, Dil-lion continued to struggle. At least six of the adults in the crowd began to surround Officer Willis, yelling loudly. Officer Willis utilized a takedown maneuver, by using his knee to hold Dillion down. He then drew his Taser and ordered the crowd to “get back.” The videotape clearly depicted Officer Willis’ manner of addressing the crowd and reflected his fear and uncertainty of the situation. The officer repeatedly scanned the scene around him, with the Taser in his hand as more onlook *332 ers arrived. One woman, presumably plaintiff, continued to yell at Officer Willis and continued to approach Officer Willis and Dillion, repeatedly ignoring the officer’s command to “get back.” Once the crowd became quiet and retreated, Officer Willis was able to handcuff Dillion and place him in the police car. The audio portion of the video does not reveal any sounds which indicate that Dillion was at any time being injured. Once Dillion was handcuffed and helped to his feet, nothing in either his facial |inexpression or demeanor indicated that he was in pain. There is nothing in the videotape to indicate that Officer Willis acted with either malice or hostility toward Dillion or the crowd.
The trial court, as the trier-of-fact, heard the testimony of the parties and eyewitnesses. It clearly did not believe the testimony presented by plaintiff, which was contradicted by the videotape. From the perspective of the witnesses, it is obvious that they did not agree that it was necessary for the officer to take down and handcuff the minor child. Thus, they clearly disagreed with the manner in which Officer Willis handled the entire incident. While there may have been an alternative method of effectuating the detention and arrest, we find that, given the totality of the circumstances, the evidence of record supports the trial court’s finding that Officer Willis’ methods of securing the situation and ensuring his safety were reasonable and did not amount to the use of excessive force.
Additionally, we find no manifest error in the trial court’s conclusion that plaintiff failed to show that Dillion suffered any injuries as a result of the incident. Medical records introduced into evidence show that on the day after the incident, Dillion was treated in the emergency room at Willis-Knighton South for complaints of pain in his right knee and scapula. The emergency room physician noted that Dil-lion was “able to ambulate without any problems” and had “full range of motion of all his joints.” The physician’s notes also reflected that Dillion had “no contusion over his scapula region [and][h]is right knee has no swelling, no contusion, no effusion, no laxity, no Lachman’s.” The emergency room physician |,, concluded, “The patient [has] a completely normal exam and no evidence of fracture.” Also, in Dillion’s records from Louisiana Methodist Children and Family Services, the therapist noted that Dillion “exhibited no hyper-vigilance or excessive anxiety due to the trauma,” and that Dillion had reported that he was “almost over [the incident].” The therapist further noted that Dillion “appeared to have entered therapy in a position of almost total recovery, [and his] therapy was brief due to his advanced stage of recovery upon entering therapy.” This assignment lacks merit.
CONCLUSION
For the foregoing reasons, we affirm the trial court’s ruling granting defendant’s motion for involuntary dismissal. Costs of this appeal are assessed to plaintiff, Darlene Atkins.

. The allegation that Officer Willis drew his gun and threatened to shoot Dillion was proven false. Plaintiff later admitted that Officer Willis never drew his revolver; rather, he pulled his Taser and pointed it at the crowd.