890 So.2d 1 (2004)
Charm Renee Owens PENDER (Bradford), Plaintiff-Appellant
v.
Jason Morgan PENDER, Defendant-Appellee.
No. 38,649-CA.
Court of Appeal of Louisiana, Second Circuit.
May 12, 2004.
*2 Donald L. Kneipp, Monroe, for Appellant.
Mason L. Oswalt, Monroe, for Appellee.
Before BROWN, GASKINS and LOLLEY, JJ.
LOLLEY, J.
In this custody action, Charm Renee Owens Pender Bradford ("Charm") appeals from a judgment of the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana, awarding Jason Morgan Pender ("Jason") primary domiciliary custody of their minor child. For the following reasons, we affirm.

FACTS
Charm and Jason were married on June 6, 1992. Of this union, one daughter, Brittany Nicole Pender ("Brittany"), was born on February 19, 1994. The parties resided together in Ouachita Parish, Louisiana until Charm filed a Petition for Divorce on August 6, 1998. The parties shared custody of Brittany on an equal basis until a child custody hearing was scheduled for April 1999. The evidentiary hearing for parental fitness commenced on April 9, 1999; however, the parties entered into a stipulated custody decree on July 29, 1999. As stipulated, the custody decree awarded both parties joint custody of Brittany, with Charm being the primary domiciliary parent. Jason was awarded alternating weekend visitation beginning Thursday from 6:00 p.m. until Sunday at 6:00 p.m. He was further awarded visitation on Wednesday afternoons after school until 7:00 p.m. on the weeks that he did not have scheduled weekend visitation with Brittany. As the agreement stipulated, the parties were to share equally holiday visitation and Jason *3 was awarded primary custody of Brittany during the summer months from one week after school recessed for summer until one week prior to school resumed for the fall semester. During this period, Charm was awarded alternating weekend visitation from Thursday at 6:00 p.m. until Sunday at 6:00 p.m. Brittany was five years old when the parties entered into this stipulated custody decree on July 29, 1999.
In January 2002, Charm and her new husband, Jeffrey Shane Bradford ("Shane"), were arrested for possessing illegal drugs in their home where Brittany resided in West Monroe, Louisiana. In response to this event, Jason filed an Ex parte Motion for Temporary Custody and a Motion and Rule for Change of Custody and Child Support, wherein he alleged that there had been a substantial change of circumstances since the stipulated judgment. Jason specifically claimed that Charm was engaged in a lifestyle that was unsuitable and unfit to rear their minor daughter based upon his belief that Brittany was being exposed to illegal drug use which he contended was resulting in neglect and abuse to the minor child. In his petition, Jason further alleged that Charm was also exposing their daughter to individuals with lengthy criminal histories, including her husband, Shane. Finally, Jason argued that Charm was not acting responsibly in regard to Brittany's education as the child had been absent numerous days from school and had twenty-three tardies, twenty-one of which were unexcused.
The trial court awarded temporary custody of Brittany to Jason on February 6, 2002, based upon the verified petition. A hearing was held on February 20, 2002, wherein the trial court awarded Jason temporary custody of Brittany pending further orders. Charm was awarded overnight supervised visitation with her daughter at the maternal grandmother's home on alternating weekends pending a hearing on the merits. Additionally, the trial court ordered that a home study be conducted at the residence of Charm and Jason by a court-appointed psychologist.
After a trial on the merits, the trial court issued extensive Written Reasons for Judgment designating Jason as the primary domiciliary parent of Brittany, while awarding Charm alternating weekend visitation with her daughter during the school year from Friday through Sunday, as well as several hours of visitation one day every week. The trial court further awarded Charm primary custody of Brittany during the summer from the time school dismissed until prior to resumption of school for the fall. Jason was awarded alternating weekend visitation from Friday through Sunday during the summer, as well as several hours one day every week. The trial court further ordered that the holidays be equally split between the parties. This appeal by Charm ensued.

DISCUSSION
On appeal, Charm raises two assignments of error. First, she argues that the trial court erred in awarding Jason primary domiciliary custody of Brittany, which was not consistent with their original stipulated custody decree. This assignment is without merit.
The nature of the original custody award dictates the burden of proof a party has when seeking to modify a prior permanent custody award. There are two types of custody awards. The first is a stipulated judgment, wherein the parties consent to a custodial arrangement. The other type of custody award is a considered decree, which is rendered after the trial court has received evidence of parental fitness to exercise care, custody and control of a child. White v. Kimrey, 37,408 *4 (La.App.2d Cir.05/14/03), 847 So.2d 157, writ denied, XXXX-XXXX (La.08/01/03), 849 So.2d 534; Shaffer v. Shaffer, XXXX-XXXX (La.App. 1st Cir.09/13/00), 808 So.2d 354, writ denied, 2000-2838 (La.11/13/00), 774 So.2d 151.
When the original custody decree is a stipulated judgment, the party seeking modification must prove that there has been a material change in circumstances since the original decree and that the proposed modification is in the best interest of the child. White, supra; Touchet v. Touchet, 36,881 (La.App.2d Cir.01/29/03), 836 So.2d 1149; see also La. C.C. art. 131.
According to La. C.C. art. 134, the relevant factors to be considered in determining the best interest of the child may include the following:
(1) The love, affection, and other emotional ties between each party and the child;
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child;
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs;
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment;
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes;
(6) The moral fitness of each party, insofar as it affects the welfare of the child;
(7) The mental and physical health of each party;
(8) The home, school, and community history of the child;
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference;
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party;
(11) The distance between the respective residences of the parties; and
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The trial court is not bound to make a mechanical evaluation of all of the statutory factors listed in La. C.C. art. 134, but should decide each case on its own facts in light of those factors. Moreover, the trial court is not bound to give more weight to one factor over another, and when determining the best interest of the child, the factors must be weighed and balanced in view of the evidence presented. Rogers v. Stockmon, 34,327 (La.App.2d Cir.11/01/00), 780 So.2d 386. Finally, the factors are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court. McIntosh v. McIntosh, 33,908 (La.App.2d Cir.08/31/00), 768 So.2d 219.
Continuity and stability of environment are important factors to consider in determining what is in the child's best interest. Hoskins v. Hoskins, 36,031 (La.App. 2d Cir. 4/05/02), 814 So.2d 773; Washkow v. Washkow, 33,965 (La.App.2d Cir.08/23/00), 765 So.2d 1210; Roberie v. Roberie, 33,168 (La.App.2d Cir.12/08/99), 749 So.2d 849. A change from a stable environment should not be made absent a compelling reason. Roberie, supra.
Generally, the determination by the trial court regarding child custody is entitled to great weight and should not be disturbed on appeal absent a clear abuse of discretion. *5 Roberie, supra; Warlick v. Warlick, 27,389 (La.App.2d Cir.09/29/95), 661 So.2d 706. An appellate court should be reluctant to interfere with custody plans implemented by the trial court in the exercise of its discretion. Wilson v. Wilson, 30,445 (La.App.2d Cir.04/09/98), 714 So.2d 35.
Because the parties were subject to a joint stipulated custody decree, the burden of proof to change the agreement regarding Brittany's custody would therefore be to show that (1) there has been a material change of circumstances since the original custody decree was entered, and (2) the proposed modification is in the best interest of Brittany.
The evidence clearly supports the trial court's award of primary domiciliary custody to Jason. The trial court found that the testimony of Charm and Shane was inconsistent and unbelievable in regard to why illegal drugs were found in their home. The record clearly substantiates this finding. Although Charm contends she and Shane have not tested positive for drugs, it does not negate the fact that they were arrested for possessing illegal drugs in their home. The record further substantiates that Shane indeed has a long criminal history, including an arrest for hit and run, flight from an officer, vehicular negligent injury, and fourth-offender DWI. Charm testified that she was unaware of Shane's former criminal record, moving the trial court to remark in its written reasons for judgment that, "Mrs. Bradford chose to marry Mr. Bradford and exposed Brittany to a man about whom she knew very little."
Other factors noted by the trial court include testimony from the court-appointed psychologist, Dr. Sally Thigpen, who testified that Charm suffered from numerous psychological deficiencies. The testimony of Phyllis Taylor, a licensed family counselor also supported the trial court's holding. Ms. Taylor testified that she had interviewed Brittany 23 times during a period from February 2002 until February 2003. It was her expert opinion that Charm was putting an extreme amount of pressure on Brittany by making the child feel guilty about being with her father and that she was encouraging Brittany to lie about certain situations. Ms. Taylor testified that these actions by Charm were having a long term negative impact on Brittany.
On the other hand, the evidence shows that Brittany has benefitted greatly from the more stable and structured environment provided at Jason's home during the litigation of her custody. The paternal grandmother has played a large part in Brittany's improved school performance, despite Charm's contention that the public school is not as difficult as the private school Brittany was previously attending. Also noteworthy is that since Brittany began residing with Jason, her school attendance has greatly improved and her ADHD issues have been addressed at her new school. Based on these reasons, we find that the trial court did not abuse its discretion in awarding Jason primary domiciliary custody of Brittany.
In her second assignment of error, Charm argues that the trial court erred in failing to allow her more visitation with Brittany, i.e., that her visitation should be significantly increased. Again, this assignment is without merit.
Joint custody determinations are governed by La. R.S. 9:335 which provides in pertinent part that:
(A)(1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
(2)(a) The implementation order shall allocate the time periods during which *6 each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.
If the trial court finds that a decree of joint custody is in the best interest of the child, it does not necessarily require an equal sharing of physical custody. Ellinwood v. Breaux, 32,730 (La.App.2d Cir.03/01/2000), 753 So.2d 977; Nichols v. Nichols, 32,219 (La.App.2d Cir.09/22/99), 747 So.2d 120. The primary consideration should be substantial time rather than strict equality of time as mandated by the legislative scheme providing for joint custody of children. Ellinwood, supra; Boyd v. Boyd, 26,292 (La.App.2d Cir.12/07/94), 647 So.2d 414. As noted by the Ellinwood court, joint custody does not necessarily mean a 50/50 sharing of time. See also Nichols, supra; Wilson, supra.
Instead, every child custody case is to be viewed on its own peculiar set of facts and the relationships involved, with the paramount goal of reaching a decision which is in the best interest of the child. Nichols, supra. Each case will depend on the children's ages, the parents' situations and other factors relevant to that particular custody dispute. Brazan v. Brazan, 93-2369 (La.App. 1st Cir.06/24/94), 638 So.2d 1176.
Although the trial court apparently found Charm's credibility very questionable, it did acknowledge Charm's effort to improve her parenting skills by attending the parenting course offered at the YMCA. In this court's opinion, the trial court was most generous in allowing Charm to have primary custody of Brittany during the summer months. Considering Charm and Shane's recent arrest for possession of illegal drugs and in light of the totality of the circumstances, we find the trial court was not manifestly erroneous in awarding Charm substantial time rather than strict equality of time. The record reflects that the trial court weighed all the evidence presented and made a decision based on the best interest of Brittany.
For the reasons assigned, we affirm the judgment of the trial court, costs of these proceedings are assessed to the appellant.
AFFIRMED.