930 So.2d 1148 (2006)
Michael L. GRAY, et al., Plaintiffs-Appellants
v.
CITY OF MONROE, et al., Defendants-Appellees.
No. 41,087-CA.
Court of Appeal of Louisiana, Second Circuit.
May 17, 2006.
*1149 Fewell-Kitchens by Richard L. Fewell, Jr., for Appellants.
Nanci S. Summersgill, for Appellees.
Before BROWN, CARAWAY, and DREW, JJ.
BROWN, C.J.
This is a personal injury action arising out of an intersectional collision between a Ford F-150 truck being driven by plaintiff, Jimmy Gardner, and a City of Monroe fire truck. The Ford truck was owned by plaintiff, Michael L. Gray. The driver of the fire truck, Claude Randall Thompson, and the City of Monroe were named as defendants. Following the presentation of plaintiffs' case on the merits, defendants moved for an involuntary dismissal.
Plaintiffs claim that the fire truck had a red light; however, the driver of the fire truck testified that he had a green light. The trial court found that the Ford truck was coming off the interstate and went through the intersection at a "rapid rate of speed and he apparently didn't slow down or try to avoid the fire truck (which) almost got through the intersection before it was struck." The trial court further found that the fire truck proceeded into the intersection with its siren on and lights flashing. The court observed that the driver of the fire truck "was doing everything he was supposed to do." The motion for dismissal was then granted. Plaintiffs have appealed. Finding no error, we affirm.

Discussion
La. C.C.P. article 1672(B) states:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor *1150 of the moving party or may decline to render any judgment until the close of all the evidence.
A motion for involuntary dismissal requires the trial court to evaluate all of the evidence presented by plaintiffs and render a decision based upon the preponderance of the evidence. King of Hearts, Inc., v. Wal-Mart Stores, Inc., 27,137 (La. App.2d Cir.8/23/95), 660 So.2d 524. An appellate court should not reverse an involuntary dismissal in the absence of manifest error, and there is no manifest error if there is a reasonable factual basis for the finding of the trial court. Silva v. Calk, 30,085 (La.App.2d Cir.12/10/97), 708 So.2d 418.
La. R.S. 32:24, provides in relevant part:
A. The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver of an authorized emergency vehicle may:
. . .
(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation;
. . .
D. The foregoing provisions shall not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.
Plaintiffs cite Cascio v. City of Monroe, 530 So.2d 1170 (La.App. 2d Cir.1988), in which this court held the driver of a City of Monroe fire truck predominately at fault for running a red light and colliding with Cascio. The court wrote that the fire truck operator "should have foreseen that vehicles favored with the green light would be crossing the Louisville intersection and he should have proceeded with extreme caution." Id. at 1174.
This accident occurred on September 29, 2002, and the evidence and testimony showed that plaintiff, Jimmy Gardner, was the driver and only occupant of the Ford truck and that he was going to the hospital where his girlfriend was in labor. Gardner left I-20 and was traveling east down the ramp to the intersection with U.S. Highway 165 (Business/Civic Center Boulevard). At this intersection, Hwy. 165 is four lanes heading north and south with a fifth lane for southbound traffic turning left (east) onto Calypso Street. The intersection is controlled by a traffic light. Claude Thompson, a Monroe city firefighter, was driving a Monroe fire truck south on U.S. Highway 165 heading towards the intersection with Calypso Street. The fire truck had almost cleared that intersection when it was struck on the left rear quarter panel by the Ford truck with such force as to be knocked over onto its side.
Jimmy Gardner testified that he had no memory of the accident due to his injuries. Nicholas Frith was 15 years old when he witnessed the accident. Nicholas was sitting behind the passenger's seat of a car driven by his brother, Sydney Frith. Nicholas testified that his brother's car was going south on Hwy. 165 and had stopped at the red light in the left turning lane when the accident occurred. Their intent was to turn onto Calypso. He observed Gardner turning his head toward the Frith car, but he did not see Gardner looking any other way. Nicholas admitted that, from his vantage point, he could not see either Gardner's or the fire truck's signal light but that his brother had a yellow turn light. Nicholas testified that *1151 Gardner's truck was going down the exit ramp fast; Gardner's truck hit the fire truck's back left side; and the collision lifted the fire truck up and knocked it onto its side.[1]
Daniel McCarty testified that he was sitting beside Nicholas Frith in the back seat of Frith's brother's car when the accident occurred. Sydney Frith and Lisa McCarty, Daniel's sister, were in the front seat. They were later married and stationed in Guam at the time of trial. Daniel, who was 13 years old at the time of the accident, gave confusing testimony as to who had the red or green light. Like Nicholas, Daniel testified that Gardner looked at their car, but did not look ahead at the fire truck. Daniel did not recall a yellow turn arrow for the Frith vehicle and testified that the Ford was exiting the ramp "a little fast." Daniel could not see the color of the signal light for either Gardner or the fire truck.[2]
Corporal J.L. Sanders, with the Monroe Police Department for 14 years, worked the accident in question. Corporal Sanders read from the accident report noting that, "It says based on witness information it appears, I didn't say it was, it appears that vehicle one (fire truck) had a red light and vehicle two (the Ford) had a green light." Corporal Sanders also testified that the posted speed limit for the traffic on Hwy. 165 was 35 mph and that the estimated speed of the fire truck was 45 mph. Corporal Sanders further testified that the posted speed for coming off the I-20 ramp was 30 mph, and the estimated speed for the Ford was 50 mph. Both of these estimates came from eyewitnesses to the accident. Corporal Sanders testified that he did not find any brake marks for the Ford which would have indicated that Gardner attempted to brake and avoid the crash.
Claude Randall Thompson was the driver of the fire truck. At the time he had been employed by the Monroe Fire Department for seven years. Prior to the accident at issue, Thompson had never been in a vehicular accident.
Thompson testified that at the intersection before Calypso Street he had a red light and that he had lowered the fire truck's speed to 2-3 mph, then picked up speed until the fire truck was moving 25-30 mph. Thompson stated that at 300-400 feet he had a clear view of the Calypso intersection where the accident occurred and that he had a green light.
Thompson stated that he still had the green light when the fire truck entered the intersection. He further testified that the fire truck was well into the intersection when he saw the Ford and knew that it was not going to stop. Thompson stated that he accelerated, trying to avoid a collision.
Gardner had no memory of the accident and his entire case rested upon the testimony of Nicholas Frith and Daniel McCarty *1152 which was inconsistent, and ultimately, for the trial court, unpersuasive. Nicholas stated that his brother's car had a yellow turn signal, strongly implying that both the fire truck and the Ford had a red light. Daniel testified that Sydney Frith's car had a green light (clearly indicating that the Ford had a red light) but had stopped due to the approaching fire truck. Daniel thereafter testified that the Frith vehicle had a red light, calling into question the value of his testimony. Neither Nicholas nor Daniel could see traffic signals for either the fire truck or the Ford. Both Nicholas and Daniel observed Gardner looking to his left, at them, but not looking straight ahead or to his right, which would explain how the Ford drove into the fire truck without attempting to brake or swerve.
The fire truck had clearly preempted the intersection. This intersection was five lanes, and the view for approaching motorists was unobstructed. Gardner was speeding and at best was attempting to beat the light. Gardner was looking to his left and was not attentive to the emergency vehicle to his front. The trial court found that key facts in plaintiffs' case were not established with reliable certainty. We cannot say that the trial court was manifestly erroneous in finding that plaintiffs failed to establish any negligence on the part of defendants by a preponderance of the evidence.

Conclusion
For reasons set forth above, the judgment of the trial court is affirmed. Costs are assessed to plaintiffs-appellants, Michael L. Gray and Jimmy Gardner.
NOTES
[1] At trial Nicholas read from a police report that he wrote at the request of the investigating officer. In the report, Nicholas wrote:

The black truck was coming down the ramp (which became Calypso Street after it crossed the intersection) and tried to beat the light and looked towards us (opposite from the direction the fire truck came from) and went passed the lights and it hit the fire truck. The fire truck had its lights and sirens on. The black truck that had a green light that was about to turn yellow. The black truck was going down the ramp fast. The fire truck fell on its side.
[2] Daniel also read from a report he gave to police:

We saw the fire truck coming so we stopped. Then we saw the dually (the Ford) coming off the interstate. Then the driver (of the Ford) looked at us and the next thing we saw the dually hit the fire truck. The fire truck had its lights and siren on but the dually had the green light.