GASKINS, J.
 

 | ,This appeal arises from the trial court’s denial of the father’s request to modify custody to award 50/50 shared equal custody of the parties’ son. Following the presentation of the father’s evidence on the rule to modify, the trial court granted the mother’s motion for involuntary dismissal. We affirm the trial court judgment.
 

 FACTS
 

 The parties, Christopher Neil Chandler, Sr., and Elizabeth Mary Toups Chandler, were married in July 1996. A son was born in January 1997. They separated in 1999. Thé father filed for divorce in March 2000; the petition did not request custody of the child. The mother answered the petition and filed a rule for custody and support. She requested joint custody with her being designated as the domiciliary parent. The mother, then a medical student, also sought interim spousal support and child support. The father answered her rule and filed a reeonven-tional demand; he requested that he be designated as the domiciliary parent or that they jointly be so designated under a plan of equal sharing. He also requested child support.
 

 In June 2000, the parties were divorced. Pursuant to a consent judgment, they were awarded joint custody with the mother as domiciliary parent. Monthly child support of $628 was awarded to the mother. The father was given reasonable visitation in accordance with a joint custody implementation plan. Judgment was signed on June 20, 2000. In that judgment, the mother was directed to maintain medical, health and dental insurance for the child; the father was ordered to pay for 74.74 percent of |2any uncovered medical, dental, orthodontic and prescriptive drug expenses for the child with the mother paying for the remaining 25.26 percent.
 

 In January 2005, the Department of Social Services (DSS) filed a rule to change payee/fix arrears. DSS requested that it be designated the proper party to collect child support from the father. It alleged that the father owed $15,583.75 in past child support and $5,539.56 in past medical expenses. In March 2005, a hearing officer set the arrears at $12,859.08. An immediate income assignment order was also signed.
 

 In July 2005, the father filed a
 
 pro se
 
 request for reduction of child support on the grounds that both parties had remarried; he had two children in his new marriage; and the mother was now a medical
 
 *572
 
 doctor married to another doctor. The motion was denied by the hearing officer. The father filed an exception to the hearing officer’s recommendation; he complained that the mother had placed the child in day care and asserted that it would be better and cheaper if the child were instead cared for during the day by his present wife who was a stay-at-home mother. The exception to the hearing officer’s recommendation was denied.
 

 In January 2009, the father filed a
 
 pro se
 
 rule to modify child support. In February 2009, the hearing officer recommended that the decrease be denied. Judgment accepting the recommendation was initially signed in March 2009.
 

 In April 2009, the father again filed a
 
 pro se
 
 motion to modify child support. The hearing officer recommended a reduction to $399, effective |8June 1, 2009. The trial court accepted the recommendation and signed a judgment in conformity with it on July 14, 2009.
 

 In August 2009, the father filed a
 
 pro se
 
 petition to modify custody and/or visitation. He stated that his visitation with the child was every other weekend from Thursday at 6:00 p.m. through Sunday at 6:00 p.m., four weeks in the summer, and one-half of school holidays. He asserted that the mother was a medical doctor who worked long hours and left the 12-year-old boy in the care of a nanny whereas he worked from his home office.
 
 [1]
 
 He also contended that he had two other children who resided with him 50 percent of the time and wished to see their half-brother more often. The father requested modification awarding him 50/50 physical custody of the child.
 

 The matter was heard on October 7, 2009. The father was the only person to testify during the presentation of his case. The mother was prepared to testify, as was her present husband. The mother also asked that the trial judge speak to the 12-year-old child; the father objected to this request.
 

 Since the father was not represented by counsel, he was placed under oath and allowed to address the court. He accused the mother of “choosing her career” and placing herself above her children by becoming a medical doctor and putting her son in the care of “nonparents.” He stated that his career choice was influenced by a desire to be a father first and not to withhold financial support from the mother. He said his second marriage 14was a mistake and that during it, he often found it was not in the boy’s best interest to be at his home. Having divorced again, he stated that he had enjoyed 50/50 custody of his two children from that marriage (ages five and three) for the previous 27 months. According to him, these two children want to spend more time with their half-brother. He also testified that he is in a “very good relationship” with a woman who has three children of her own.
 

 The father asserted that he was concerned by the lack of time the mother and the stepfather spend with the child due to their careers. He blamed the mother for the child not being admitted to Middle Magnet School for sixth grade because she supposedly missed a deadline, and he contended that the boy was forced to stay in an “undesirable” school (St. Joseph’s) for a year due to this. He claimed that the child has bad dental and fingernail hygiene due to the mother’s lack of attention. He stated that he is very involved in most of the boy’s activities, but the mother’s side of the family is rarely represented at these events. The father also said he did not feel the child should be forced to testify
 
 *573
 
 against him and asserted that the mother has traumatized the child by “coaching” him.
 

 On cross-examination, the father admitted that he was about $22,000 in arrears on his child support obligation. He characterized his second wife as suffering from “some instability issues” and as being jealous of the child because of his great dedication to the boy; he admitted that the child witnessed arguments between them. He also admitted that when he was ^Irresponsible for getting the boy to school on Fridays, he was often late but “[n]ever more than five minutes.” He conceded that this upset the child.
 

 The father stated that the child participated in a science fair project involving a surgical device; however, he accused the mother' of doing most of the work oh the project. When the child went to the state science fair in Baton Rouge, the father and his girlfriend drove the boy down there, but chose to return to Shreveport before the fair because of the girlfriend’s work schedule. He admitted that despite his concern for the child’s dental hygiene, he had never taken him to the dentist. While he asserted that he spent time lecturing the boy on cleaning his fingernails, he agreed that the boy did not follow his instructions.
 

 A review of his calendar indicated that the father had not exercised his visitation with the child on several occasions due to other plans. He also admitted that he had no evidence of coaching, just a “feeling” because he didn’t think the boy’s answers to him were “genuine” in some discussions. He denied that he sought modification of the custody situation because the state had seized his 401(k) account to satisfy his past due child support.
 

 The father admitted that he asked the child if he was going to testify about how often the father has him babysit his half-siblings when he is in the father’s custody. He further admitted that after the boy responded to the question, he told the child that he would cross-examine him and the judge would then throw the child in jail for perjury. The father insisted that this was just a “complete joke” during a “fun-loving discussion.”
 

 | (At the conclusion of the father’s testimony, the mother moved for involuntary dismissal. The trial court granted the motion. It found that the father had failed to carry his burden of proving a change in circumstances or that the requested modification was in the child’s best interest. In her oral reasons for ruling, the trial judge expressed serious concerns about the father’s credibility, stating that she found him to be evasive and that she believed that he “has an unrealistic view of the world.” She further stated that based upon her observations of him in court, she questioned his mental stability. The judge noted his failure to pay his child support obligations and observed that the current litigation arose only after his 401(k) plan was seized due to his child support arrear-ages. Judgment dismissing the father’s motion to modify custody was signed on October 23, 2009.
 

 The father appeals.
 

 LAW
 

 Involuntary dismissal
 

 La. C.C.P. article 1672(B) states:
 

 In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judg
 
 *574
 
 ment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
 

 A motion for involuntary dismissal requires the trial court to evaluate all the evidence presented by the plaintiff and render a decision based upon a preponderance of the evidence.
 
 Gray v. City of Monroe,
 
 41,087 (La.App.2d Cir.5/17/06), 930 So.2d 1148. The appellate court should not reverse |7an involuntary dismissal in the absence of manifest error, and there is no manifest error if there is a reasonable factual basis for the finding of the trial court.
 
 Gray, supra; Bartley v. Fondren,
 
 43,779 (La.App.2d Cir.12/3/08), 999 So.2d 146.
 

 Split custody
 

 The paramount consideration in any determination of child custody is the best interest of the child. La. C.C. art. 131;
 
 Evans v. Lungrin,
 
 1997-0541 (La.2/6/98), 708 So.2d 731;
 
 Semmes v. Semmes,
 
 45,006 (La.App.2d Cir.12/16/09), 27 So.3d 1024. The court is to consider all relevant factors in determining the best interest of the child. La. C.C. art. 134.
 

 La. R.S. 9:335(A)(2)(b) provides, that to the extent feasible and in the best interest of the child, physical custody of the child should be shared equally. Yet, when the trial court finds that a decree of joint custody is in the best interest of the child, the statute does not necessarily require an equal sharing of physical custody.
 
 Semmes, supra.
 

 Substantial time, rather than strict equality of time, is mandated by the legislative scheme providing for joint custody of children.
 
 Pender v. Pender,
 
 38,649 (La.App.2d Cir.5/12/04), 890 So.2d 1;
 
 Semmes, supra.
 

 Continuity and stability of environment are important factors to consider in determining what is in the child’s best interest.
 
 Pender, supra.
 

 The nature of the original custody award dictates the burden of proof a party has when seeking to modify a prior permanent custody award. There are two types of custody awards. The first is a stipulated judgment, wherein the parties consent to a custodial arrangement. The other type of custody | Raward is a considered decree, which is rendered after the trial court has received evidence of parental fitness to exercise care, custody and control of a child.
 
 Pender, supra.
 
 When the original custody decree is a stipulated judgment, as here, the party seeking modification must prove that there has been a material change in circumstances since the original decree and that the proposed modification is in the best interest of the child.
 
 Pender, supra.
 

 The trial court has vast discretion in deciding matters of child custody and visitation.
 
 Slaughter v. Slaughter,
 
 44,056 (La.App.2d Cir.12/30/08), 1 So.3d 788. This discretion is based on the trial court’s opportunity to better evaluate the credibility of the witnesses.
 
 Slaughter, supra.
 

 DISCUSSION
 

 In his
 
 pro se
 
 brief, the father asserted that he did not receive a fair trial. He asserted that the trial judge made statements that made him feel that she did not want to hear his case and that “trivialized” his case.
 
 [2]
 
 Because the trial court did not
 
 *575
 
 find him to be a credible witness, the father accuses the judge of attacking him personally.
 

 In her brief, the mother argues that the trial judge’s comments about the trial scheduling and her willingness to hear all of the evidence presented by the father do not support the father’s claim that he was treated unfairly. Also, she asserts that the trial judge’s credibility findings were not abusive and were certainly areas of proper.consideration by the court.
 

 |9The mother argues that in order to modify the prior custody order, the trial court would have been required to find that there had been a change of circumstances materially affecting the boy’s welfare and that the proposed modification was in the best interest of the child. Among other things, cross-examination of the father revealed that he had not fully exercised the visitation allotted to him under the current custody order and that he failed to financially support the boy. The mother contends that the trial court did not abuse its great discretion in finding that the father failed to carry his burden of proof.
 

 We note at the outset that the record does not support the father’s contention that he did not receive a fair trial. The trial judge’s introductory comments prior to the commencement of the trial merely demonstrate that she was informing the parties of the time constraints involved in hearing the case, as well as reassuring them that the matter would be continued if necessary to allow the presentation of evidence.
 

 As to the trial court’s credibility determination pertaining to the father, such a determination was well within its province. Whereas we review a “cold” record, the trial judge had the opportunity and advantage of observing the father’s demeanor in person. The trial judge, having observed the demeanor of the witnesses, is in the better position to rule on their credibility.
 
 Pearce v. Pearce,
 
 348 So.2d 75 (La.1977);
 
 Mizell v. Mizell,
 
 37,-004 (La.App.2d Cir.3/7/03), 839 So.2d 1222. Based upon the record before us, we are unable to discern any abuse of the trial court’s much discretion in making a credibility determination in the instant case.
 

 |inThe prior custody award was a stipulated consent judgment. Therefore, the burden of proof the father was required to carry in seeking a modification was to prove (1) that there had been a material change in circumstances since the original decree and (2) that the proposed modification is in the best interest of the child.
 

 Some changes have naturally occurred in the lives of the parties since the rendition of the original custody decree almost 10 years ago. The mother has completed her medical education and become a doctor. Both parents remarried; whereas the mother is still married, the father is divorced again. The child is now a young teenager. However, these sorts of changes alone have not generally been shown to be changes materially affecting the child’s welfare which justify a change in his custody. See and compare
 
 Stroud v. Stroud,
 
 43,003 (La.App.2d Cir.12/14/07), 973 So.2d 865;
 
 Shaw v. Shaw,
 
 30,613 (La.App.2d Cir.6/24/98), 714 So.2d 906,
 
 writs denied,
 
 1998-2414 (La.11/20/98), 729 So.2d 556,
 
 and
 
 1998-2426 (La.11/20/98), 729 So.2d 558; and
 
 Darnall v. Darnall,
 
 95-169 (La.App.3d Cir.5/31/95), 657 So.2d 387.
 

 
 *576
 
 The evidence presented indicates that the child has flourished under the current custody arrangement. He makes excellent grades and has even competed in science fairs successfully enough to advance to the state level. Like the trial court, we see no evidence in this record indicating that the proposed change sought by the father would be in the best interest of this child, who has apparently benefitted greatly from the stability and continuity he has enjoyed under the existing custody decree. Finding no Inmanifest error, we affirm the decision of the trial court to grant the mother’s motion for involuntary dismissal of the father’s motion to modify custody.
 

 CONCLUSION
 

 The trial court judgment is affirmed. Costs of this appeal are assessed against the appellant, Christopher Neil Chandler, Sr.
 

 AFFIRMED.
 

 [1]
 

 . The record demonstrated that the father is a real estate agent.
 

 [2]
 

 . Prior to the commencement of trial, the trial judge indicated that while she did not usually hear custody cases on Wednesday, she had made room for this one because her office scheduled it. Also, she remarked that because she had an appointment that she
 
 *575
 
 could not change, they would start and get through as best they could and come back to finish on another day if necessary.