GARRETT, J.
LLauri Bowden, the maternal grandmother, appeals a trial court judgment awarding sole custody of her daughter’s four children to their father, Robert Eli Brown. We affirm the trial court judgment.
PROCEDURAL BACKGROUND
This is an unusual custody case because Robert Eli Brown and Jessica Inell Brown, the parents of the four children at issue, are still legally married.[1] There was no proceeding for divorce between the parents to trigger the Louisiana Civil Code articles pertaining to child custody determinations under La. C.C. arts. 131, et seq., when this litigation began. The initial pleading that was filed in the 26th Judicial District Court on March 26, 2012, in the matter entitled Lauri Bowden v. Robert Eli Brown and Jessica Inell Brown, was captioned “Joint Motion for Custody.” Although the suit caption referred to a plaintiff and two defendants, all three parties were “appearers.” The one-page pleading contained no information about the marital status of the parents or any other background information. The pleading merely recited that the three appearers “feel that it is in the best interest of the minor children” that custody be awarded to the *1197 grandmother subject t.o liberal visitation rights by the mother and the father. There was no service or citation and no rule date was requested as is the customary practice in custody matters. There are no court minutes for March 26, 2012. The record does not reflect that any of the parties came to court on March 26, 2012, when the grandmother was granted custody. Counsel for the grandmother confirmed at oral argument that none of the -^parties were in court when the judgment was presented to the judge. Although the grandmother was represented by counsel, the Browns were not; they signed the pleadings in proper person. Since none of the parties appeared in court, there obviously was no evidence adduced, or any inquiry made by the court concerning the reasons underlying the joint motion.
Problems, of course, arose immediately. On May 7, 2012, Mr. Brown, again appearing in proper person, filed in the same docket number but now styled Robert Eli Brown v. Lauri Bowden, a rule for contempt against his mother-in-law, alleging he had not been allowed to see his children. Later, on July 12, 2012, now represented by counsel, Mr. Brown filed a “Motion to Modify Custody.” This matter was now captioned Robert Eli Brown v. Lauri Bowden and Jessica Inell Brown. At this juncture, there were multiple proceedings pending in district court, juvenile court and criminal court involving the various parties who were involved in the lives of the four children. After a contested three-day trial in district court, the trial court awarded sole custody to the father subject to certain conditions. As set forth above, the maternal grandmother has appealed. Although Mrs. Brown was present during the contested custody case, she has not appealed from the ruling.
FACTUAL BACKGROUND
The Browns have four children — three sons who are currently ages 10, four and two, and a daughter who is now eight years old. The record suggests that the couple became parents while still teenagers. During some of their marriage, the Browns lived in the same household with her mother, |3Mrs. Bowden. One notable exception was a period when Mrs. Bowden was incarcerated in Texas, apparently for mail fraud.
The couple separated in August 2011. Mr. Brown moved in with his mother while Mrs. Brown and the children remained in the mobile home with Mrs. Bowden and her boyfriend, William Debord;[2] Mr. De-bord’s daughter, Chanda Debord; and Chanda’s young son and daughter. Mr. Debord had legal custody of Chanda’s children. The residence is apparently owned by Mr. Debord. At various times, Jami Pangle, Mrs. Bowden’s other daughter, also lived there.
In about October of 2011, Mrs. Brown and the four children moved to Texas where they lived with her boyfriend, Ernie Mendoza, a convicted felon. While in Texas, the two oldest children were not enrolled in school. After approximately a month, Mrs. Brown sent the children back to Louisiana to live with her mother. In January 2012, Mrs. Brown returned and moved back in with her mother and the children. As set forth above, on March 26, 2012, the “Joint Motion for Custody” was filed and the judgment was signed that same day.[3]
*1198 On May 7, 2012, Mr. Brown, in proper person, filed the rule for contempt against Mrs. Bowden for noncompliance with the visitation schedule. The suit was now captioned Robert Eli Brown v. Lauri Bowden. Mrs. Brown was not named as a party. Mr. Brown alleged that Mrs. Bowden had refused to allow him to visit with his children. The testimony adduced at the custody hearing indicates that Mrs. Bowden thwarted Mr. Brown’s efforts to see his children and his parents’ efforts to see their grandchildren.
To further complicate matters, Mr. Brown’s mother, Sheila Taylor, reported suspected physical abuse of Mr. Debord’s granddaughter, who lived in the same household as the Brown children. Mrs. Taylor had repeatedly observed injuries to the child such as a busted lip, braises and burns. When she questioned Mrs. Bow-den about these injuries, she received unsatisfactory explanations. Following an investigation, the child, who was approximately 15 months old, and her four-year-old brother were taken into protective custody by the authorities. The Department of Children and Family Services discovered that Mrs. Bowden, an alleged perpetrator of the child’s injuries, had legal custody of the Brown children. The Brown children were removed from Mrs. Bowden’s home pursuant to an instanter removal order issued on May 9, 2012, by the juvenile court judge. They remained in foster care for more than two months.
On July 12, 2012, Mr. Brown, now represented by counsel, filed the instant Motion to Modify Custody in which he alleged significant changes in circumstances since the March 2012 judgment warranting an award of sole custody to him. In addition to the removal of the children pursuant to the instanter order, Mr. Brown also alleged that: (1) on June 21, 2012, Mrs. Bowden, Mrs. Brown and Mr. Debord had been charged with second degree | scruelty to juveniles in criminal court; (2) on July 9, 2012, it was determined in juvenile court that the Brown children could be returned to Mrs. Bowden pursuant to an Informal Adjustment Agreement because they were not the injured children in the Debord children protective custody matter; and (3) the parties were set to return to juvenile court on July 23, 2012, to sign that agreement, which would prohibit the children from being around Mr. Debord, allow Mrs. Brown only supervised visitation and allow Mr. Brown alternate weekend visitation. Mr. Brown also contended that Mrs. Bowden coerced him into signing the original March 2012 judgment as she had represented that it was only a temporary measure to protect the children from their mother removing them from the state again. He also asserted that Mrs. Bowden had a history of using drugs, committing crimes such as theft, and trying to obtain custody of other people’s children.
The custody hearing in district court began on July 19, 2012, and continued on September 27 and 28, 2012. The trial court noted that the juvenile court was pretermitting any further action on the proceedings in juvenile court due to the pending custody case being handled in district court. The sordid testimony detailed extensive drug use and drug distribution by most of the people involved with the care of the Brown children.[4] Mrs. Bow- *1199 den’s own daughters testified about their mother’s drug use, drug sales, and physical abuse of Mr. Debord’s granddaughter.[5] Even | f,the testimony of the grandmother’s employer — which was surely intended to support the grandmother’s position — digressed into an embarrassing recitation of the witness’ own recent drug proclivities. The testimony also detailed extensive criminal activity together with incriminating Facebook postings. Almost everyone involved with the children was in an adulterous relationship. At the conclusion of the evidence, the trial court noted that essentially everyone who testified — with the exception of Mr. Brown’s parents and stepmother — was “either a drug user or a drug dealer or both.” The trial court decreed that it was time for the Brown children to get away from “that type of lifestyle” and granted sole custody to their father. In ruling, the court specifically found that it was not in the best interest of the Brown children to remain in their current environment with their maternal grandmother and that their only chance for stability was their father with assistance from his parents and stepparents. Mr. Brown was ordered to live with the children at the residence of one of his parents.
The trial court further ordered that all of the parties were to refrain from using drugs, smoking, or being intoxicated around the children. Ernie Mendoza was banned from being around the children. Mrs. Brown was given supervised visitation at the homes of the paternal grandparents. Mrs. Bowden was granted visitation the third weekend of each month, four days at Christmas and spring break, and two nonconsecutive weeks in the summer. She was also allowed reasonable telephone contact with the children. Costs were assessed one-half each to Mrs. Bowden and Mr. Brown, and the contempt rule against Mrs. Bowden was denied.
^CUSTODY AWARD TO FATHER
In several assignments of error, Mrs. Bowden argues that the trial court erred in awarding sole custody to the father.
Law
As mentioned above, the parents of the children are still legally married to each other and it is debatable whether the grandmother ever had the right to institute any court proceedings in district court. It would appear that the matter should have been handled in juvenile court utilizing the Louisiana Children’s Code provisions pertaining to “Voluntary Transfer of Custody.” (See La. Ch. C. arts. 1510, et seq.) Had the matter been handled in juvenile court, all of the procedural safeguards contained in the Louisiana Children’s Code would have been followed to establish that the parents were “knowingly and voluntarily” transferring custody. All of the forms deemed necessary by the legislature would have been filled out and, unless specifically waived by the court, a formal hearing would have been held. If a parent later revoked consent to the transfer, another hearing would have been held and the juvenile court would make its determination in the “best interests of the child” after considering:
(1) The length of the parent/child separation.
(2) The current fitness of the parent.
*1200 (3) The frequency of contact between the parent and the child during the separation.
(4) The efforts made by the parent to exercise parental responsibilities during the separation, including support.
(5) The terms and conditions of the judgment. (See La. Ch. C. art. 1523.)
However, no one ever questioned where this matter should have been handled, or what laws and procedures should have been utilized. The trial 18court judge who had to preside over the three-day custody trial was presented with a “fait accompli” and was left with no alternative but to apply the Louisiana Civil Code articles on custody and the jurisprudence dealing with “parents versus nonparents” litigation to resolve this matter.
It is well settled in our statutory and jurisprudential law that the paramount consideration in any determination of child custody is the best interest of the child. La. C.C. art. 131; Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731; Corral v. Corral, 47,294 (La.App.2d Cir.6/13/12), 93 So.3d 793.
When the parent competes with a nonparent of the child, the parent’s right to custody is superior unless the parent is unable or unfit, having forfeited parental rights. Jones v. Coleman, 44,543 (La.App.2d Cir.7/15/09), 18 So.3d 153. If an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the court shall award custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment. La. C.C. art. 133. “Substantial harm” in this context includes parental unfitness, neglect, abuse, and abandonment of rights. It may also encompass other circumstances, such as a prolonged separation of the child from its natural parents causing substantial harm to the child. Mills v. Wilkerson, 34,694 (La.App.2d Cir.3/26/01), 785 So.2d 69.
The trial court has vast discretion in deciding matters of child custody and visitation. Slaughter v. Slaughter, 44,056 (La.App.2d Cir.12/30/08), 1 So.3d 788. This discretion is based on the trial court’s opportunity to better evaluate the credibility of the witnesses. Slaughter, supra; Chandler v. Chandler, 45,308 (La.App.2d Cir.5/19/10), 37 So.3d 569. The trial judge, having observed the demeanor of the witnesses, is in the better position to rule on their credibility. Chandler, supra. Therefore, the trial court’s determination will not be disturbed on appeal, absent a clear showing of an abuse of discretion. Slaughter, supra.
In Jones v. Coleman, supra, this court conducted an exhaustive review of the jurisprudence involving litigation between parents and nonparents. The court then set forth the standards for a parent to reclaim a child placed in the custody of a nonparent:
In summary, we therefore hold that the initial judgment under Article 133, placing custody of the child with a nonpar-ent, is a determination of the unfitness of the parent and the fitness of the nonparent to provide an adequate and stable environment. The considered versus nonconsidered decree analysis under Evans and Bergeron does not apply for the consideration of the initial judgment’s effect in any future action for the modification of the nonparent’s custody. In any proceeding thereafter to restore custody of the child to the parent, and to thereby modify or end the nonparent’s custody, the parent shall have the burden of proof and the dual tests of Article 133 shall apply. First, *1201 the parent must demonstrate his rehabilitation which eliminates the “substantial harm” threat to the child which existed at the time of the initial judgment. Second, the parent must establish that the adequate and stable environment in which the child was placed with the nonparent as a result of the initial adjudication has materially changed. In the absence of such a change, the parent’s claim to modify the nonparent’s custody of the child shall not prevail, and the rehabilitation of the parent alone shall afford him only an appropriate visitation allowance under La. C.C. art. 136. [Emphasis added.]
Discussion
On appeal, Mrs. Bowden argues that the trial court erred in finding that Mr. Brown had carried his burden of proof under Jones v. Coleman, supra. In particular, she claims that he did not prove that he had “reformed” or that he could offer an adequate and stable environment for his children.
In the oral reasons for judgment, the trial court ruled that the case of Jones v. Coleman, supra, provided the applicable law, but that the Jones case was distinguishable from the matter before the court. As to the first burden of proof, the parent’s rehabilitation eliminating the “substantial harm” threat to the child which presumably existed at the time of the initial judgment, the court noted that only six months had passed between the original judgment and the conclusion of the trial. Under the circumstances of this case, the court found that Mr. Brown could not be considered legally unfit at the time of the transfer. The court found that the March 2012 document was not an acknowledgment of unfitness. To the extent that Mr. Brown had a “history,” the court noted that everyone who testified, except for members of Mr. Brown’s family, had the same issues.
As to the second burden of proof, a material change to “the adequate and stable environment in which the child was placed with the nonparent,” the court found that the environment at Mrs. Bow-den’s house was “anything but stable. It has been totally and completely unstable.” The court noted all the testimony about illegal drug activity. While unable to say who actually harmed Mr. Debord’s granddaughter, the court observed that the child was injured on Mrs. Bowden’s watch and she thus bore some responsibility. The court noted its concern of similar injury befalling the Brown children if they remained in Mrs. Bowden’s custody.
In We note, as did the trial court, that the situation in the instant case is wholly different and distinguishable from what occurred in Jones v. Coleman, supra. In that case, young, unmarried parents surrendered custody of their son to the maternal grandparents shortly after his birth. When the child was seven months old, the grandparents filed for custody, asserting that an award of custody to the parents would result in substantial harm to the child, and a consent judgment in their favor was subsequently rendered. Shortly after the child’s third birthday, the father sought to change custody. After another court appearance, another consent judgment was rendered which expanded the father’s visitation rights. When the child was four and a half years old, the father sought primary custody of the boy. The trial court further expanded the father’s visitation, but found it was in the child’s best interest to remain in the custody of his grandparents who had raised him virtually from birth.
In the instant case, the Brown children lived with their parents from birth until the parents separated in August of 2011. *1202 Although the family did live in the same household as Mrs. Bowden for some of the time, the testimony demonstrates that the children were in their parents’ care. The testimony also indicates that at some point the family lived with Mr. Brown’s mother. After the separation, the children initially remained with their mother in the same household as Mrs. Bowden before moving to Texas. After a month, the mother then sent the children back to Mrs. Bowden’s home. Several months later, the mother rejoined them. In the meantime, the father visited the children and supplied either cash or material [ 12items they required. Mrs. Bowden persuaded the parents to sign documents that resulted in the rendition of a judgment granting her custody without any court appearances or procedural safeguards. The petition requesting custody did not make any allegation that the children would be at risk of “substantial harm” if the parents had custody. Shortly thereafter, the children were removed from Mrs. Bowden’s household due to injuries sustained by another child residing there and put in foster care. Mrs. Brown and Mrs. Bowden were among the parties suspected of harming that child and criminal charges were filed. After several months in foster care, the children were placed back with Mrs. Bowden under an agreement brokered in juvenile court. The instant custody hearing commenced within weeks of the children’s return from foster care.
In this case, the trial court ruled that Mr. Brown had the burden of proof to support a change in custody and that the burden had been carried. The trial court correctly ruled there was no initial finding of unfitness on Mr. Brown’s part as a result of the March 2012 judgment. The court also correctly ruled that the children were not in a stable environment with Mrs. Bowden. Accordingly, the court correctly found that Mr. Brown carried the burden of proof necessary to divest custody from Mrs. Bowden under the circumstances of this case.
The best interest of the child is always the paramount consideration in deciding custody.[6] After three days of testimony replete with adultery, use hsand distribution of an assortment of illegal drugs, criminal convictions and all-around poor judgment exercised by the various caregivers to the Brown children, the trial court concluded that the best interest of these children dictated that they be removed from their current environment. Cognizant that Mr. Brown’s parents and their respective spouses were not tainted by any drug allegations and that they had signified their great desire to assist Mr. Brown by providing housing and child care assistance should he be granted custody, the trial court found that Mr. Brown was the best chance the children had for a stable and adequate environment. The trial court provided lengthy and cogent reasons for the ruling on the record. Based upon this record, we find no manifest error in the trial court’s decision.
La. C.C. art. 134 Factors
Mrs. Bowden further claims that the trial court erred in applying the factors set forth in La. C.C. art. 134. She contends that the trial court should have found that virtually all of the factors favored her.
La. C.C. art. 134 states:
*1203 The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
|h(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The trial court is not bound to make a mechanical evaluation of all of the statutory factors listed in La. C.C. art. 134, but should decide each case on its own facts in light of those factors. Corral v. Corral, supra. These factors are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court. Corral v. Corral, supra.
While the trial court found that the eighth factor (home, school and community history of child) and the twelfth factor (responsibility for the care and rearing of the child previously exercised) were in Mrs. Bowden’s favor, it concluded that they were outweighed by the fourth factor (the length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment) and the fifth factor (the permanence, as a family unit, of the existing or proposed ^custodial home or homes), which were in Mr. Brown’s favor. As to the tenth factor (the willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party), the trial court sadly noted: “I’m afraid all these relationships after this three-day trial and all the finger pointing and whatever these relationships are probably forever lost. I hope not, but we’ll see.” The court specifically found that it was not in the best interest of the Brown children to remain in their current environment and that their only chance for stability was their father with assistance from his parents and stepparents.
We find no abuse of the trial court’s discretion in its evaluation of the relevant La. C.C. art. 134 factors. The trial court’s conclusion that the children’s best interests were not served by leaving them in their current environment is fully supported by the record.
EVIDENTIARY ISSUES
Mrs. Bowden argues that the trial court erred in admitting evidence of events that occurred prior to the March 2012 judgment that the father was seeking to *1204 modify. Specifically, the trial court ruled that it would allow the father to “go back a reasonable amount of time” in presenting evidence.
Evidence of incidents prior to entry of a stipulated judgment may not be relevant to prove a change of circumstances, but may nevertheless remain relevant on the issue of best interest of the child. The trial court should not exclude evidence in a custody modification proceeding if that evidence is relevant and material to an issue which the parties have not had a full and | ififair opportunity to litigate. Verret v. Verret, 34,982 (La.App.2d Cir.5/9/01), 786 So.2d 944; Diamand v. Davis, 47,332 (La.App.2d Cir.6/27/12), 94 So.3d 1027, writ denied, 2012-1922 (La.9/12/12), 97 So.3d 1005.
As explained above, the March 2012 judgment came into being through unusual circumstances. The Browns testified at the custody trial that Mrs. Bowden manipulated each of them into signing papers to give custody of their children to her by presenting it as a mean of thwarting the other parent while protecting his or her own rights to the children. Neither parent was represented by counsel and neither parent was present in court. The March 2012 judgment cannot be construed as a true consent judgment under the circumstances of this case.
We find no error in the trial court’s ruling to allow Mr. Brown to go back a “reasonable amount” of time in order to present relevant evidence pertaining to the best interest of the children which had not previously been litigated.
DE FACTO CUSTODY TO PATERNAL GRANDPARENT AND SPOUSE
Mrs. Bowden contends that the trial court’s ruling amounted to an award of custody to the paternal grandfather and his wife. She argues that, if the children are not returned to her, the case should be remanded to the trial court for a trial on whether custody should be awarded to this couple.
The trial court’s ruling gave sole custody of the children to their father. In view of the challenges that he was certain to face as a single, working parent of four young children, the court conditioned this custody |17award upon Mr. Brown accepting the assistance of his immediate family. His parents and his stepmother testified enthusiastically and in great detail about their ability and willingness to provide assistance. The trial court was keenly aware of the roles that the paternal grandparents and their respective spouses would be playing when it awarded custody to Mr. Brown. We find that no remand is necessary.
TESTIMONY AND STATEMENTS OF CHILDREN
Mrs. Bowden contends that the trial court erred in denying her request that the court interview the two oldest children, who were then ages nine and eight. In conjunction with this assignment of error, she also complains that the trial court allowed hearsay evidence from the children’s aunt, Jami Pangle, about what these two children said about bruises and burns on Mr. Debord’s granddaughter, but then disallowed hearsay testimony when Mrs. Bowden was asked whether the children wanted to visit with their father.
During Ms. Pangle’s testimony, she was asked about the injuries to Mr. Debord’s granddaughter. She began to recount statements made to her by the two oldest children on the subject. Citing the relaxed evidentiary rules in child custody cases, the trial court overruled Mrs. Bow-den’s hearsay objection to this testimony. Mrs. Bowden’s counsel then indicated that a request to allow the children to testify was forthcoming. The trial court stated that it would not allow them to testify in *1205 open court, but did not foreclose the possibility of speaking to them in chambers. On the last day of the hearing, Mrs. Bow-den requested that the trial court interview at least the |1stwo oldest children. Mr. Brown’s counsel did not object to Mrs. Bowden’s motion, but opined that it was inappropriate given the children’s ages. The trial court agreed and declined to interview the children.
Law
In child custody cases, a relaxed evidentiary standard can be used to advance the purposes of the custody proceeding. La. C.E. art. 1101 B(2); Folse v. Folse, 98-1976 (La.6/29/99), 738 So.2d 1040; Willhite v. Willhite, 44,535 (La.App.2d Cir.8/19/09), 17 So.3d 495. Clearly, the Louisiana legislature has concluded that the best interests of children are not served by strict application of the rules of evidence. Folse v. Folse, supra.
The trial court has broad discretion in deciding whether to allow the testimony of a child. Albarado v. Toler, 495 So.2d 355 (La.App. 3rd Cir.1986); Cooper v. Coper, 594 So.2d 939 (La.App. 3rd Cir.1992). The trial court may consider the reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference. La. C.C. art. 134. The purpose of the in-chambers interview is to determine the child’s preference outside the presence of the parents. Woods v. Woods, 43,182 (La.App.2d Cir.6/11/08), 987 So.2d 339, writ denied, 2008-2256 (La.11/21/08), 996 So.2d 1110.
Discussion
The testimony from Ms. Pangle about what the two oldest children told her regarding the injuries to Mr. Debord’s granddaughter was extremely brief and ultimately added little, if anything, to the overall information about the child’s injuries. Further, the court, in its reasons for ruling, 119speciftcally noted that it had no idea who actually perpetrated the physical harm suffered by the Debord grandchild. Regardless of who the actual perpetrator may have been, the trauma happened on Mrs. Bowden’s watch. This testimony pertained to an important issue in these custody proceedings — the safety of the children in Mrs. Bowden’s household. Accordingly, given the relaxed evidentiary standard in child custody cases, we find no error in the trial court’s admission of this testimony.
Additionally, there was considerable testimony about the injuries to Mr. Debord’s granddaughter from the adults who testified. Therefore, to the extent that Mrs. Bowden argues that these young children might have shed light on those injuries, we find that the trial court did not abuse its broad discretion in ruling that it would not require these children to testify in open court or to submit to an interview in the judge’s chambers.
We also find no error in the trial court ruling that sustained an objection to a question posed to Mrs. Bowden about whether the children wanted to visit their father. Due to their young ages, the preference of these children on this matter was irrelevant.
SURREBUTTAL
In another assignment, Mrs. Bow-den contends that the trial court erred in refusing to allow her to testify again after Mrs. Brown gave rebuttal testimony in which she recanted prior testimony favorable to Mrs. Bowden.
Surrebuttal by the defendant is not a matter of right, but may be allowed at the court’s discretion. La. C.C.P. art. 1632; Whittington v. American Oil Co., 508 So.2d 180 (La.App. 4th Cir.1987) writ denied, 512 So.2d 436 (La.1987).
We find no abuse of the trial court’s discretion in denying Mrs. Bowden the *1206 opportunity to testify again on surrebuttal. In denying the motion, the trial court stated it would take judicial notice that, if allowed to testify again, Mrs. Bowden would deny all of the new testimony. The court stated:
Request is denied. I will take judicial notice that your client would get up here under oath and deny every single thing that was said. And that’s what this whole thing has been. You did. You did. I did. You didn’t. Yes you did. No I didn’t. So that’s my ruling. Your objection is noted for the record.
INSTANTER ORDER AFFIDAVIT
During Mrs. Bowden’s testimony, Mr. Brown sought to impeach her with prior statements found in the affidavit supporting the instanter order which removed the children from her care. Mrs. Bow-den’s hearsay objection was overruled; the statements were read to her and she was allowed to respond to them. At the conclusion of his case, Mr. Brown moved to admit the affidavit and the instanter order. Mrs. Bowden objected again. The trial court admitted both documents, noting that they were part of the juvenile court proceedings which the instant custody case closely tracked. On appeal, Mrs. Bowden argues that the trial court erred in admitting the affidavit into evidence because it contained impermissible hearsay evidence pertaining to the allegations of abuse.
As previously noted, the evidentiary rules are relaxed in child custody cases. The trial court deemed the information relevant in order to [21understand all of the court proceedings that were pending in the different courts. However, even assuming arguendo that the trial court erred in admitting the testimony or the affidavit, the error was harmless. There was an abundance of testimony from several witnesses about the information contained in this document, i.e., the bruises and injuries to Mr. Debord’s granddaughter, the allegations of abuse, and the circumstances leading to the placement of the Brown children in foster care.
MODIFICATION OF GRANDMOTHER’S VISITATION
Following the withdrawal of his trial counsel, Mr. Brown filed a brief in this court in proper person. He requested modification of the visitation rights awai'd-ed to Mrs. Bowden by the trial court. Since he did not appeal or answer the appeal, no such modification may be made by this court. See La. C.C.P. arts.2082 and 2133; Wiltshire v. Wiltshire, 482 So.2d 902 (La.App. 2d Cir.1986).
CONCLUSION
The trial court judgment is affirmed. Costs of this appeal are assessed to the appellant, Lauri Bowden.
AFFIRMED.

. At oral argument, Mr. Brown confirmed that he and his wife are still married.

. Although Mr. Debord is sometimes referred to as Mrs. Bowden’s fiancé, she is still married to another man.

. The circumstances surrounding this "Joint Motion for Custody” are highly controverted. Mr. Brown testified that Mrs. Bowden told him that she feared Mrs. Brown would re *1198 move the children from the state again and that this document would prevent such action while preserving his rights to the children. In her rebuttal testimony, Mrs. Brown stated that her mother told her that signing the papers would keep Mr. Brown from getting custody of the children and then her mother would give custody of the children back to her. Suffice it to say the circumstances surrounding the motion are unusual.

. Drug tests taken by Mr. Brown in June of 2012 revealed no substances. Drug tests tak *1199 en by Mrs. Brown in June of 2012 revealed methamphetamines.

. Although Mrs. Brown initially gave some testimony favorable to her mother, she later recanted and corroborated the damning testimony given by her sister against their mother. However, she consistently testified that custody of the children should be awarded to her and her husband, not to Mrs. Bowden.

. Had the initial voluntary transfer of custody been handled in juvenile court under the Louisiana Children’s Code, the determination of the "best interests of the child” would have been the focus of the hearing to revoke consent under La. Ch. C. art. 1523.