LOLLEY, J.
 

 L Tammy Joanna Jones Gerhardt, the mother, appeals the judgment by the First Judicial District, Parish of Caddo, State of Louisiana, granting sole custody of the couple’s two children to Walter William Gerhardt, the father, and supervised visitation to Tammy. For the following reasons, we affirm the trial court’s judgment.
 

 Facts
 

 Walter and Tammy were married in 1991 and had two children-one son in 1995 (“the older child”) and another son in 2000 (“the younger child”). The couple physically separated in 2009, after which a consent judgment and interim order over the custody arrangement was issued awarding Walter visitation while the children resided with Tammy.
 

 In his petition for divorce, Walter asked for sole custody of the children until Tammy secured treatment for substance abuse, an eating disorder, and mental issues. Tammy countered by asking for joint custody of the children and claiming, among other things, that Walter is abusive physically, mentally, and emotionally.
 

 Subsequently, Walter moved for two counts of contempt against Tammy, stating she was not allowing Walter visitation with the children as mandated by the court order. Tammy was found guilty of contempt of the court order, but sentencing was deferred upon Walter’s request.
 

 Shortly after, Walter filed a third rule for contempt against Tammy for, among other things, her failure, once again, to allow Walter to exercise his custody rights. The matter was heard by the trial court and witnesses were presented. Officer Matthew Reger of the Shreveport Police |2Pepartment (“SPD”) testified that he was called to Walter’s home over an incident where the older child claimed Walter had hit him. The officer did not make an arrest because he did not believe a crime had occurred. Walter testified that no physical altercation had occurred between his older child and himself, and that after that incident he had been deprived of seven weeks of visitation with the children. He also stated Tammy disparaged him in front of the children, also against court order. Walter Gerhardt’s mother, Rosemary Gerhardt, with whom Walter resided, corroborated Walter’s testimony that no physical altercation had ensued.
 

 Tammy also testified. She admitted that Walter had not had visitation with the children; however, she claimed this was because the children refused. She stated the police report regarding the physical altercation was incorrect. She also began rambling about her religious views and admitted that she will not open any letters from Walter, his attempt at communication.
 

 The trial court found Tammy guilty of contempt, reasoning that it found Walter to be very credible, while taking issue with Tammy’s credibility, even pointing out her “strange” demeanor. The trial court then ordered Tammy to serve 15 days in jail for each of three counts of contempt, running consecutively.
 

 Subsequently, Walter filed a fourth motion of contempt against Tammy and also requested sole custody of the younger child. The couple was then issued a judgment of divorce as the requisite time period had [elapsed. A hearing was conducted on the fourth contempt motion and several witnesses were called to testify.
 

 Melissa White, Tammy’s former best friend, testified that Tammy’s personality has changed drastically over the past three years. She said Tammy has become hyperactive, would not sleep for nights at a
 
 *866
 
 time, would not clean the house, would drink heavily, would exhibit paranoia, and would talk negatively about Walter in front of the children. She claims Tammy’s behavior became so alarming that she, along with other friends, held an intervention. This testimony regarding Tammy’s unusual change in behavior was corroborated by several other friends of Tammy’s: Fred White, Sharon Partain, Amanda Phillips, and Kim Gibbs. White also testified that Tammy telephoned her and said the children reported that Walter had sexually abused them. However, she also testified that as Tammy told her this, she could hear the children in the background screaming at Tammy, “No, that’s not what I said ... I said Daddy pushed me.” At the conclusion of the hearing, the contempt charge was dropped in light of an agreement made between the parties.
 

 In this new agreement, the custody remained joint, but Walter was designated as the domiciliary parent and Tammy was to have visitation on weekends. Tammy would pay the note and insurance for her vehicle as well as receive child support payments. Interim spousal support concluded. Additional requirements were placed on each parent when he or she was in custody of the children as well. They were ordered not to consume alcohol; [4to provide adequate supervision; not to have overnight visitors; to supervise the older child after 6:00 p.m.; and not to leave the children alone together. Also, Tammy agreed to allow the older child to go to a treatment facility in Tennessee that was chosen by Walter.
 

 Walter subsequently filed a fifth motion for contempt against Tammy. This time, Walter requested Tammy not only be found in contempt of the court order, but also that her visitation with the children be immediately suspended after he learned of a driving incident, in which Tammy, while driving the younger son, ran her vehicle off the road into a ditch. Tammy and the son were found the next morning, still in the vehicle. The older son had been left alone at home the entire night. Walter also claimed Tammy had fallen delinquent on the financial obligations she agreed to pay pursuant to the court order, which he had to pay for her.
 

 In opposition, Tammy prayed for sole custody of the children, supervised visitation by Walter, and the appointment of an attorney to represent the children in the matter. She claimed Walter abused the children both physically and sexually and that the treatment facility Walter chose to send the older child to was actually a “bogus facility operated by the discredited cult ‘Church of Scientology.’” Tammy also claimed she did not freely consent to the previous custody agreement as it was induced by fraud, and, therefore, could not be in contempt of breaching it. Pending a hearing on the matter the trial court suspended Tammy’s visitation with the younger child and issued her restricted and supervised visitation with the older child.
 

 |sA hearing was held and witnesses were called. Corporal R.J. Herkey of the SPD testified that he responded to the scene when Tammy was found in her vehicle on the side of the road at 8:00 a.m. He stated the incident did not appear to have been alcohol-related. Detective Jeff Holiday of the SPD testified that he investigated the abuse claims and did not have enough evidence to make an arrest.
 

 Walter testified that Tammy has not been paying her car note or insurance, and that Tammy did not move out of the family home when ordered by the court to do so. He stated Tammy had violated the custody agreement by leaving the older son alone after 6:00 p.m. as well as consuming alcohol. He also said he stands by his decision to send his older child to the rehabilitation
 
 *867
 
 treatment center in Tennessee and that he has never abused the children.
 

 Tammy testified that the children reported to her that Walter had sexually abused them. She also testified to the medications she takes: Adderall; hypoglycemia medication; hydrocodone; Lor-tab; and Topamax. She testified that she knows the incident in the vehicle was dangerous, but the reason it occurred was because she had consumed wheat to which she is allergic and drunk wine which can create problems with her hypoglycemia. She rambled off topic several times during her testimony. She also claimed her own father, the children’s grandfather, and an unknown person had previously abused the older child, as well.
 

 The older child testified that Walter has both physically and sexually abused him and that he wants nothing to do with Walter, but that he loves |6his mother. He said the rehabilitation center to which his father sent him was a very bad experience and did not help him at all. He testified that he was the only child among several “crazy” adult patients and that he was forced to run and sit in saunas for hours, as well as read books on Scientology.
 

 Drs. Ann Springer and Deborah Brown testified that the children had reported to them they had been abused by Walter physically and sexually, and they had no reason to believe this was untrue or coached. Tammy’s doctor, Dr. Ricky Jones, testified that Tammy is hypoglycemic and that alcohol can exacerbate the condition.
 

 After articulating a thorough reasoning for the judgment, the trial court found for Walter, rejecting the evidence purporting to prove abuse, and awarded Walter sole custody of the children while allowing Tammy supervised visitation. This custody arrangement was set up to be modified in the future if Tammy showed signs of improvement so she could eventually have more visitation with her sons and then go back to a joint custody arrangement. The court also found Tammy guilty of three counts of contempt for failing to pay car insurance and -car mortgage payments, leaving the younger child unsupervised, and drinking in the presence of the children against court orders. Tammy was remanded into custody until she reimbursed Walter for the amount he paid toward her financial obligations and submitted to a drug test. Tammy now appeals this judgment.
 

 |7Law and Discussion
 

 On appeal Tammy asserts four assignments of error. First, she asserts the trial court erred by granting Walter sole custody when he had not sought such a custody modification in his pleading. Second, she contends the trial court abused its discretion by failing to appoint an attorney for the children. Third, she submits the trial court erred by admitting specific evidence, namely, Tammy’s health records, a letter from the Department of Social Services, and a report from the Office of Community Services. Last, Tammy asserts the trial court erred in modifying the custody agreement to award Walter sole custody and Tammy visitation of the two children.
 

 The paramount consideration in any determination of child custody is the best interest of the child. La. C.C. art. 131;
 
 Evans v. Lungrin,
 
 97-0541 (La.02/06/98), 708 So.2d 731;
 
 Semmes v. Semmes,
 
 45,006 (La.App.2d Cir.12/16/09), 27 So.3d 1024. The court is to consider all relevant factors in determining the best interest of the child. La. C.C. art. 134. The trial court is not bound to make a mechanical evaluation of all of the statutory factors listed in La. C.C. art. 134, but should decide each case on its own facts in light of those factors.
 
 Semmes,
 
 27 So.3d at 1029. These factors are not exclusive, but are provided as a
 
 *868
 
 guide to the court, and the relative weight given to each factor is left to the discretion of the trial court.
 
 Id.
 

 To the extent feasible, and in the best interest of the child, physical custody of the child should be shared equally. La. R.S. 9:335(A)(2)(b). Continuity and stability of environment are important factors to consider in ^determining what is in the best interest of the child.
 
 Pender v. Pender,
 
 38,649 (La.App.2d Cir.05/12/04), 890 So.2d 1.
 

 In the area of domestic relations, much discretion is vested in the trial judge, particularly in evaluating the weight of evidence which is to be resolved primarily on the basis of credibility of witnesses. When findings of fact are based upon a decision regarding credibility .of witnesses, respect should be given to those conclusions for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on understanding and believing what is said.
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844 (La.1989). The trial judge having observed the demeanor of the witnesses is in the better position to rule on their credibility.
 
 Mizell v. Mizell,
 
 37,004 (La.App.2d Cir.03/07/03), 839 So.2d 1222. The determination by the trial court regarding child custody is entitled to great weight and should not be disturbed on appeal absent a clear abuse of discretion.
 
 Pender,
 
 890 So.2d 1. An appellate court should be reluctant to interfere with custody plans implemented by the trial court in the exercise of its discretion.
 
 Id.
 
 In order to reverse a factfinder’s determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding and (2) further determine that the record establishes that the factfinder is clearly wrong or manifestly erroneous.
 
 Salvant v. State,
 
 2005-2126 (La.07/06/06), 935 So.2d 646;
 
 Johnson v. Morehouse General Hospital,
 
 44,798 (La.App.2d Cir.12/22/09), 27 So.3d 1085.
 

 1
 
 aCustody
 

 In her first assignment of error Tammy submits the custody agreement was modified in violation of her due process. In his pleading, Walter requested a modification to the visitation schedule; he did not request the joint custody arrangement be changed to sole custody. Because the judgment awarded Walter sole custody, which was not prayed for in his pleadings, Tammy asserts this was outside the trial court’s authority.
 

 In support of her argument, Tammy relies on
 
 Havener v. Havener,
 
 29,785 (La. App.2d Cir.08/20/97), 700 So.2d 533,
 
 Verret v. Verret,
 
 34,982 (La.App.2d Cir.05/09/01), 786 So.2d 944, and
 
 Griffith v. Latiolais,
 
 2010-0754 (La.10/19/10), 48 So.3d 1058, standing for the proposition that a trial court cannot expand the pleadings or go beyond the relief requested by a litigant. The difference between the cited case law and the case before this court is in the expansion of the pleadings based on the evidence presented. Louisiana C.C.P. art. 862 grants the trial court authority to render a final judgment granting the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings. However, a judgment rendered beyond the pleadings is a nullity, although a trial court has the discretion to allow enlargement of the pleadings to conform to the evidence.
 
 Curtis v. Curtis,
 
 34,317 (La.App.2d Cir.11/01/00), 773 So.2d 185. In
 
 Havener
 
 and
 
 Verret,
 
 the respective trial courts did not allow for expansions of the pleadings because evidence was not presented to justify such. In
 
 Griffith,
 
 sole custody was neither prayed 110for nor supported by the record; therefore, the trial court did not expand the pleadings there either.
 

 
 *869
 
 But in the case
 
 sub judice,
 
 the record shows the contrary. The trial court offered well thought out reasons for judgment which reflected that the trial court examined the evidence presented by both parties in great detail. The trial court ruled outside the pleadings based on that evidence. We conclude after a careful examination that the trial court’s ruling of sole custody is also supported by the record and within the dictates of La. C.C.P. art. 862.
 

 It is also important to note that although Walter did not pray for sole custody, Tammy did. Therefore, she was on notice that the issue of custody was before the trial court at the hearing. The trial court reached the conclusion that evidence existed for replacing the joint custody decree ■with a sole custody award in favor of Walter, which would be in the best interest of the children pursuant to La. C.C. art 184, on an anticipated temporary basis. However, the trial court recognized the benefit of a joint custody plan and assured Tammy that as soon as she showed improvement, less limited visitation and eventual joint custody would be considered again.
 

 While case law is helpful, it is important to remember that each child custody case must be viewed in light of its own particular facts and circumstances, with the prevailing inquiry as to whether the custody arrangement is in the best interest of the child.
 
 McCormic v. Rider,
 
 2009-2584 (La.02/12/10), 27 So.3d 277. Therefore, we conclude that the trial | n court did not abuse its discretion in awarding Walter sole custody of the children.
 

 Legal Representation for the Children
 

 In her second assignment of error, Tammy asserts that the trial court erred in failing to appoint the children their own attorney pursuant to La. R.S. 9:345 based on the children’s claims of abuse by Walter. Pursuant to La. R.S. 9:345 the trial court
 
 may
 
 appoint an attorney to represent a child in a custody hearing if after a contradictory hearing the court determines it is in the best interest of the children to do so. The trial court shall consider many factors including whether the proceeding is exceptionally intense or protracted, if this appointment is likely to elicit information that would probably not come out to the court otherwise, or if the interests of the children and the parent conflict. A trial court
 
 shall
 
 appoint an attorney to represent the children if in the contradictory hearing any party presents a prima facie case that a parent has sexually, physically, or emotionally abused the children.
 

 It is clear from the trial court’s judgment, as well as its thorough reasons for judgment, that it found no prima facie case of abuse; therefore, it was completely within the court’s discretion whether to appoint an attorney to represent the children. The trial court did not arbitrarily deny the request, but instead considered it, and within its discretion, found it unnecessary. The trial court noted:
 

 The Court is going to deny the request to appoint counsel without prejudice to raise it again at some point. I want to be clear that I don’t mean this to be the law of the case, so to speak, such that it can’t be raised again if appropriate. But at this point in time, from |1Pwhat has gone on in the case, I see no reason to appoint attorneys for the children. These people, Mr. and Mrs. Gerhardt, are not wealthy at this point in time. It will be expensive. I don’t think it will be productive. And I’d be far more inclined to appoint some mental health professionals. We address that when necessary.
 

 
 *870
 
 The trial court’s conclusion on this issue was not in error; thus, this assignment of error is without merit.
 

 Admission of Evidence
 

 In her third assignment of error, Tammy argues the trial court erred in admitting three specific pieces of evidence into the trial. The first piece of evidence at issue is Tammy’s medical records from Willis-Knighton Pierremont Health Center after the incident in which she was found passed out in her vehicle with her younger son. Tammy argues the trial court erred in admitting the records because the subpoena used to obtain the records was flawed. The second piece of evidence is a letter from the Department of Social Services stating the Department had done an investigation into the claims of abuse against Walter and subsequently cleared Walter of those charges. Tammy claims the letter was inadmissible at trial because it was unauthenticated and hearsay. The third piece of evidence is the record of the investigation into Tammy’s driving incident conducted by the Office of Community Services. Tammy claims the records are also inadmissible as hearsay.
 

 The trial court is granted broad discretion in its evidentiary rulings which will not be disturbed absent a clear abuse of that discretion. At trial a party must make a timely objection to evidence the party considers to be inadmissible. On appeal, this court must consider whether the complainedjof13 ruling was erroneous and whether the error affected a substantial right of the party affected. If not, a reversal is not warranted.
 
 Johnson,
 
 27 So.3d 1085.
 

 In the case
 
 sub judice,
 
 the trial court’s thorough and insightful reasons for judgment adequately explain the opinion and the trial court’s decision. The weight given to particular pieces of evidence, as well as credibility determinations that led it to reach its decision were traced. Two of the records at issue are written reports regarding Tammy’s driving incident. The trial court heard testimony from Tammy herself about the incident in which she admitted to having drunk alcohol that night, passing out, and being disoriented. No relevant additional information was contained in the records that was not admitted by Tammy herself at trial.
 

 The other evidence at issue is a report stating Walter had been investigated and cleared of child abuse charges. The trial court took special consideration to name eight reasons it felt the claims of abuse against Walter were not founded. Only one of those eight reasons was that the claims had been investigated two times prior to this court proceeding and Walter had been cleared both times. The evidence at issue was a report stating one of the times in which Walter had been cleared of the charges. It is obvious the trial court would have still concluded the claims were unfounded without consideration of the report in question.
 

 Error has been defined as harmless when it is trivial, formal, merely academic, and not prejudicial to the substantial rights of the party assigning it, and where it in no way affects the final outcome of the case.
 
 Buckbee v. United Gas Pipe Line Co. Inc.,
 
 561 So.2d 76 (La. 1990). It is clear the evidence at issue in no way affected the final outcome of the case and was, therefore, harmless. There was overwhelming evidence to support the trial court’s findings aside from the evidence in question. This assignment of error is without merit.
 

 Applicable Legal Standard
 

 In her final assignment of error, Tammy asserts the trial court’s ruling to modify
 
 *871
 
 the custody and visitation order was not based on the proper legal standards. She claims the trial court did not analyze the case under the best interest of the child factors or base its decision to modify the custody arrangement on the required proof of a material change in circumstances. Additionally, she argues the award of sole custody was not based on the required clear and convincing evidence standard that the new arrangement was in the best interest of the children. As the Louisiana Supreme Court explained in
 
 Griffith,
 
 48 So.3d at 1070:
 

 Pursuant to the 1993 Revisions to the child custody provisions, joint custody is no longer presumed to be in the best interest of the child; however, it is mandated unless (1) there is an agreement between the parents to the contrary which is in the best interest of the child, or (2) one parent shows by clear and convincing evidence that sole custody to that parent would serve the best interest of the child. “Clear and convincing” evidence is applied in civil cases only in exceptional circumstances, “where there is thought to be special danger of deception, or where the court considers that the particular type of claim should be disfavored on policy grounds.” “The clear and convincing standard requires a party to prove the existence of a contested fact is highly probable, or much more probable than its non-existence.” (Citations omitted).
 

 It is clear that the trial court found that custody with Walter was shown by clear and convincing evidence to be in the best interest of the children, as [ 1fievidenced in the trial court’s Reasons for Judgment, particularly one of the closing comments:
 

 That’s the order at this point. And the reason I have done this with the children is because that’s what the evidence indicates. And I’m happy, as I’ve said, to change that, to modify it as rapidly as can be done but right now, I’m concerned with the safety of the children. And I’m concerned with the mental health of both the children, as well.
 

 Therefore, this assignment of error is without merit, as well.
 

 Conclusion
 

 For the foregoing reasons, the judgment in favor of Walter William Gerhardt is affirmed, and all costs of this appeal are assessed to the appellant, Tammy Joanna Jones Gerhardt.
 

 AFFIRMED.