Judgment rendered January 13, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,665-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

KENNETH R. DUNN                         Plaintiff-Appellee

versus

PEGGY BURNICE EZELL DUNN                Defendant-Appellant

* * * * *

Appealed from the
Thirty-Seventh Judicial District Court for the
Parish of Caldwell, Louisiana
Trial Court No. 29556

Honorable Ashley P. Thomas, Judge

* * * * *

MARSHALL LEON SANSON                    Counsel for Appellant


THOMAS WESLEY BURNS                     Counsel for Appellee




* * * * *


Before MOORE, PITMAN, STONE, JJ.


PITMAN, J., concurs in the result.

**STONE, J.**

The Appellant, Peggy Burnice Ezell Dunn ("Mrs. Dunn"), filed an exception of no right of action. Mrs. Dunn sought to challenge Appellee, Kenneth Dunn's ("Mr. Dunn"), petition for divorce pursuant to La. C.C. art. 103(1), arguing that the date of separation was incorrect. After a hearing, the trial court denied the exception and granted the petition for divorce. Mrs. Dunn filed a motion for a new trial, which was denied. Mrs. Dunn now appeals the trial court's granting of the petition for divorce and denial of the exception of no right of action.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On July 19, 2006, the parties were married in Hamburg, Arkansas. The parties resided as husband and wife in Kelly, Caldwell Parish, Louisiana. No children were born nor were any adopted of the marriage.

On December 17, 2018, Mrs. Dunn was taken to Citizens Medical Center by Mr. Dunn and subsequently transported by ambulance to Glenwood Regional Hospital. While at the hospital, doctors informed Mrs. Dunn of the need for her to stay in Monroe, near the hospital, due to the seriousness of her medical condition. Mrs. Dunn then informed her husband that she would not be returning to the marital domicile, and that she would be living with her sister in, Monroe, Ouachita Parish, Louisiana. Mrs. Dunn asked Mr. Dunn to bring her van and her personal items to the hospital, which he did on January 13, 2019, the date Mrs. Dunn was discharged from the hospital.

On June 26, 2019, in Caldwell Parish, Mr. Dunn filed a petition for divorce pursuant to La. C.C. art. 103(1). Mrs. Dunn filed an exception of no right of action in response. On December 4, 2019, a hearing on the

exception of no right of action and a trial on the petition for divorce were simultaneously held.

Mrs. Dunn and her sister testified in support of the exception and against the petition for divorce. Mrs. Dunn testified that on December 22, 2018, she had an emergency quadruple bypass and was in the hospital for three weeks. Mrs. Dunn further testified that Mr. Dunn would visit her every day while she was in the hospital and it was not until January 13, 2019, that they physically separated. Mrs. Dunn testified that this was the day she was discharged from the hospital and went to her sister's home for continued convalescence. Mrs. Dunn acknowledged, however, that she had been using her sister's address since May of 2018, but further maintains that it was not until the doctor advised her that she did not need to leave the Monroe area, that she actually intended to physically separate from Mr. Dunn.

Mrs. Dunn's sister, Brenda M. Wood, testified that Mr. and Mrs. Dunn could not have separated on December 23, 2018, as stated in Mr. Dunn's petition, because her sister was at the hospital in the I.C.U. Ms. Wood further testified that Mr. Dunn was there with Mrs. Dunn and at no time was there any discussion about separation or ending the marriage.

Mr. Dunn testified in support of his petition for divorce and against Mrs. Dunn's exception of no right of action. Mr. Dunn testified that he knew once Mrs. Dunn left for the hospital that she was not coming home, and that she was going to stay with her sister. Mr. Dunn testified that Mrs. Dunn asked for her van and personal items before he brought them to the hospital on January 13, 2019. However, Mr. Dunn was unable to give the exact date Mrs. Dunn told him that she was going to her sister's home, but

2

stated it occurred while she was in the hospital in Monroe before her surgery.

The trial court determined that the physical separation occurred on December 22, 2018, when Mrs. Dunn went to the E.R. and never returned to the marital domicile. Additionally, the trial court determined that the intent to terminate the marriage also occurred in December of 2018, before Mrs. Dunn had her surgery, when she told Mr. Dunn that she was not returning to the marital domicile. The trial court ultimately overruled the exception of no right of action and granted the petition for divorce. Mrs. Dunn now seeks review of both rulings.

## DISCUSSION

Mrs. Dunn has filed an appeal asking this Court to review the trial court's ruling which overruled the exception of no right of action and granted the petition for divorce.

A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. In order to reverse a trial court's determination, an appellate court must review the record in its entirety and determine that (1) a reasonable factual basis does not exist for the finding, and (2) the record establishes that the trial court is clearly wrong or manifestly erroneous. *Toston v. St. Francis Med. Ctr., Inc.*, 49,963 (La. App. 2 Cir. 10/14/15), 178 So. 3d 1084.

In the area of domestic relations, much discretion is vested in the trial judge, particularly in evaluating the weight of evidence which is to be resolved primarily on the basis of credibility of witnesses. *Gerhardt v. Gerhardt*, 46,463 (La. App. 2 Cir. 05/18/11), 70 So. 3d 863. When findings of fact are based upon a decision regarding credibility of witnesses, respect

3

should be given to those conclusions for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on understanding and believing what is said. *Rosell v. ESCO*, 549 So. 2d 840, 844 (La. 1989). The trial court having observed the demeanor of the witnesses is in the better position to rule on their credibility. *Gerhardt, supra; see Tarbutton v. Tarbutton*, 51,486 (La. App. 2 Cir. 5/2/17), 217 So. 3d 1281.

The living separate and apart contemplated as a ground for divorce under La. C.C. art. 103[1] must be voluntary on the part of at least one of the parties and continuous for the period required. *Gibbs v. Gibbs*, 30,367 (La. App. 2 Cir. 4/8/98), 711 So. 2d 331. From the point in time that a party evidences an intent to terminate the marital association, when coupled with actual physical separation, the statutorily required separation period begins to run. And that is so regardless of the cause of the initial physical separation. *Id.* The determination of how long parties have lived separate and apart is based upon factual issues depending upon the credibility of witnesses. *See Barnes v. Le Blanc*, 207 La. 989, 22 So. 2d 404 (1945); *Nelson v. Nelson*, 42,697 (La. App. 2 Cir. 12/5/07), 973 So. 2d 148; *Bishop v. Bishop*, 98-59 (La. App. 5 Cir. 5/27/98), 712 So. 2d 697.

In the instant case, Mr. Dunn filed a petition for divorce on June 26, 2019, alleging that the parties separated on December 23, 2018. During the trial both parties testified that Mrs. Dunn stated that upon her release from the hospital she would not be returning to the marital domicile. Mr. Dunn argues that this intent to separate was declared by Mrs. Dunn prior to her

---

[1] La. C.C. art. 103.1(1) states that the applicable time period is 180 days when there are no minor children of the marriage.

4

December 22, 2018, surgery. Mrs. Dunn argues that her intent was not to terminate the marriage, but to comply with the advice of her doctors. Mrs. Dunn further argues that it was not until January 13, 2019, the day she was discharged from the hospital, that she expressed her intent to end the marriage.

The facts of this case are unique, in that it was Mr. Dunn's belief that Mrs. Dunn wished to terminate the marriage thus triggering the running of the required separation period. Though Mrs. Dunn argues that her decision not to return to the marital domicile was out of medical necessity, and not an expression of her intention to end the marriage, Mr. Dunn believed otherwise. When Mrs. Dunn communicated to Mr. Dunn that she would not be returning to the marital domicile, and would be staying with her sister, Mr. Dunn took this to mean that Mrs. Dunn wished to terminate the marriage. Mr. Dunn's belief was further supported by Mrs. Dunn's request for her van and personal items prior to her discharge from the hospital. The trial court found these words and actions were sufficient to evidence an intent to terminate the marriage, and we agree.

As the trial court is in the best position to assess the demeanor and judge the credibility of witnesses who testified and those present in court, much deference is given to their ruling. The trial court found that in December 2018, there was an intention expressed by Mrs. Dunn that she desired to terminate the marriage, which Mr. Dunn believed. The trial court also found that this belief was further evidenced by Mrs. Dunn's request for her vehicle and personal belongings, prior to her discharge from the hospital.

Once an intention has been expressed to terminate the marriage, there must also be a physical separation of the parties. Here the parties were

5

physically separated while Mrs. Dunn was in the hospital and remained separated while Mrs. Dunn lived with her sister following her discharge from the hospital. Although Mrs. Dunn was hospitalized during a portion of the 180 days of separation, this is of no consequence. Once Mrs. Dunn stated her desire to terminate the marriage, and the parties were physically separated, for whatever reason, that time can be used in the calculation of when the parties lived separate and apart. *See Gibbs v. Gibbs, supra.*

After reviewing the record, there is no evidence that the trial court was clearly wrong in finding that the parties had lived separate and apart for the requisite period of time without reconciliation. The trial court's ruling denying the exception and granting the judgment of divorce does not constitute judicial error.

## CONCLUSION

For the reasons set forth above, the trial court's judgment denying the exception of no right of action filed by Appellant and granting the petition for divorce filed by Appellee is AFFIRMED.

Costs of this appeal are assessed to Appellant.