NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2022 CU 1282

LANCE BOUDREAUX

VERSUS

CARLEY WEBSTER

Judgment Rendered: **MAY 1 9 2023**

* * * * *

APPEALED FROM THE EIGHTEENTH JUDICIAL DISTRICT COURT
IN AND FOR THE PARISH OF IBERVILLE
STATE OF LOUISIANA
DOCKET NUMBER 79230

HONORABLE ALVIN BATISTE, JUDGE PRESIDING

* * * * *

Vincent A. Saffiotti
Natalie C. Neale
Baton Rouge, LA

Attorneys for Plaintiff-Appellant
Lance Boudreaux


Nicole Dufrene Streva
Morgan City, LA

Attorney for Defendant-Appellee
Carley Webster

* * * * *

BEFORE:  McCLENDON, HOLDRIDGE, AND GREENE, JJ.

**GREENE, J.**

In this custody case, the father appeals a judgment that designated the mother and father as co-domiciliary parents of the minor child, continued joint custody and weekly rotating physical custody, and decided other matters including selecting a daycare for the minor child to attend near the mother. After review, we reverse in part, amend in part, affirm in part, and remand the case for a hearing.

## FACTS AND PROCEDURAL HISTORY

Lance Boudreaux and Carley Webster had a romantic relationship and are the parents of one child, Wyatt Paul Webster, born on August 18, 2019, in Thibodaux, Louisiana. Ms. Webster was 19 and Mr. Boudreaux was 23 when Wyatt was born. Mr. Boudreaux lives in White Castle and Ms. Webster lives in Morgan City.

Ms. Webster has changed jobs several times in the last five years. She worked as a medical assistant in Thibodeaux for a few years, then worked a few days at the Baton Rouge General Hospital in Baton Rouge, then moved to Kaplan[1] to work in a pediatrician's office, and then moved back to Morgan City. She testified at trial that she worked in a bar three nights a week when she did not have physical custody, and that she was keeping her options open, but would rather be a stay at home mother than look for another job. She also testified that she had taken five nursing classes online at Baton Rouge Community College in the Spring of 2022. In 2021 and earlier in 2022, Ms. Webster had worked part-time posting nude photos of herself on an adult website for compensation. She lives in her father's home in Morgan City. Her father, who works offshore, pays the household bills. When she needs a babysitter, her mother, who also lives in Morgan City, babysits.

Mr. Boudreaux has worked as a welder at plants since the age of 18. At the time of trial, he was working four or five days a week. Mr. Boudreaux owns his own

---

[1] The hearing officer found that the move to Kaplan by Ms. Webster violated the relocation statutes. See La. R.S. 9:355.1, et seq. Ms. Webster moved to Kaplan and enrolled Wyatt in daycare there without consulting Mr. Boudreaux.

2

home and pays his own bills. He testified that on work days he gets ready for work, then brings Wyatt next door to his parents' house. His parents, who are retired, take care of Wyatt while he is at work. He and Wyatt eat dinner with Mr. Boudreaux's parents after work and then go home. He testified that when he works turnarounds at the plants, he works nights and his parents keep Wyatt for him.

The parties previously entered into a stipulated judgment on February 27, 2020, which awarded the parties joint custody, with Ms. Webster designated as the domiciliary parent without prejudice to either party to seek modification of custody, set child support at $1,000.00 per month without prejudice to either party to seek modification, and decided other matters. The parties entered into another stipulated judgment on May 13, 2020, providing for alternate weekend visitation for Mr. Boudreaux and incidental matters.

Thereafter, Mr. Boudreaux filed a rule to modify custody, and Ms. Webster answered and reconvened, asking, in part, that the amount of monthly child support be modified. The matter was heard on June 14, 2021, and the parties entered into another stipulated judgment, which was signed by the trial court on October 21, 2021. This stipulated judgment provided for joint custody with equal shared physical custody on a 2-2-5-5 rotating schedule, and continued Ms. Webster as the domiciliary parent without prejudice to the rights of either party to seek a redetermination without having to show a change in circumstances. The stipulated judgment provided a detailed holiday schedule, provided for exchanges of Wyatt at Stazione's in Pierre Part, modified child support to $650.00 per month, and provided for other matters.

On February 16, 2022, Mr. Boudreaux filed a rule to modify custody, asserting a material change in circumstances. Mr. Boudreaux asserted, in part, that Ms. Webster often left Wyatt with third parties, was possibly using illicit drugs, exposed herself on an adult website for compensation, had scheduled surgery for Wyatt to

3

have tubes put in his ears without allowing Mr. Boudreaux to attend, was unable to maintain steady employment, and had violated the relocation statute by moving to Kaplan to be with a boyfriend. Mr. Boudreaux sought to be designated the domiciliary parent and to modify physical custody so that Wyatt would primarily reside with him. Ms. Webster filed a responsive pleading and averred that the parties had agreed to an extrajudicial 7-7 (week-to-week) rotating custody schedule and that Wyatt would soon be school age.[2] She asserted, in part, that Mr. Boudreaux often left Wyatt in the care of his parents, sister, or niece, that he and his parents refused to cooperate with her attempts to potty-train Wyatt, that Mr. Boudreaux was interrogating Wyatt regarding what went on in her home, and that Mr. Boudreaux's mother was Wyatt's primary caregiver when Wyatt was in Mr. Boudreaux's care. Ms. Webster requested that physical custody be modified and that Wyatt be allowed to reside primarily with her during the school year and spend alternate weekends with Mr. Boudreaux.

The matter proceeded to a trial on August 1, 2022. At the conclusion, the trial court ordered that joint custody continue, with continuing equal physical custody on an alternating weekly basis, and designated Mr. Boudreaux and Ms. Webster as co-domiciliary parents. The trial court signed the judgment on September 1, 2022. The judgment did not modify child support, but decreed that the parties equally share in the daycare/preK-3 expenses for Wyatt to attend Central Catholic School.[3] Further, the judgment provides: that the parties meet to exchange Wyatt at the Pierre Part Store in the morning and after school during Mr. Boudreaux's week to have physical custody; that the parties be able to Facetime/talk with Wyatt at noon on Saturday and Sunday when Wyatt is with the other parent; that neither party talk negatively

---

[2] Ms. Webster testified at trial that the parties switched to a 7-7 rotating physical custody by mutual agreement soon after the 2-2-5-5 schedule was implemented.

[3] Central Catholic School is located in Morgan City.

4

about the other party; that each party notify the other of a dating partner that will be around Wyatt; that Mr. Boudreaux establish a direct deposit into Ms. Webster's checking account for child support on a biweekly basis; that the parties communicate via Our Family Wizard; that Mr. Boudreaux remit $85.00 for a medical bill reimbursement to Ms. Webster within five days; and that a review of the matter, and the issue of school attendance, shall take place by status conference on April 27, 2023. Mr. Boudreaux appealed that judgment.[4] Mr. Boudreaux makes the following assignments of error:

> 1. The trial court legally erred in designating [Mr. Boudreaux and Ms. Webster] "co-domiciliary parents" of the minor child in derogation of La. R.S. 9:335 and the Louisiana Supreme Court decision in **Hodges v. Hodges**.

> 2. The trial court legally erred in failing to allocate legal authority and responsibility to the parties or otherwise find good cause for failing to designate one domiciliary parent as required by La. R.S. 9:335 and the Louisiana Supreme Court decision in **Hodges v. Hodges**.

> 3. The trial court legally erred in failing to determine whether a material change in circumstances warranting a modification of the present custody arrangement had occurred since the original custody decree.

> 4. The trial court legally erred and/or abused its discretion [in] implicitly modifying the custodial exchanges of the minor child and making a determination on the minor child's daycare without consideration or determination of a material change in circumstances or the best interest of the child.

## ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO

In assignments of error numbers one and two, Mr. Boudreaux maintains that the trial court erred in designating the parties as co-domiciliary parents. Louisiana Revised Statute 9:335 provides in part:

---

[4] Ms. Webster argues in her brief that the judgment should be changed in her favor; however, she did not appeal the judgment, nor did she file an answer to the appeal. An appeal is the exercise of the right of a party to have a judgment of a trial court revised, modified, set aside, or reversed by an appellate court. La. C.C.P. art. 2082. An appellate court cannot amend a judgment in favor of a party who has neither appealed nor complained by way of an answer to the appeal. **Williams v. City of Baton Rouge**, 2002-0339 (La. App. 1 Cir. 2/14/03), 848 So.2d 9, 14; see **Carranza v. Carranza**, 2018-971 (La. App. 3 Cir. 6/5/19), 276 So.3d 1028, 1032-1033; **Bowden v. Brown**, 48,268 (La. App. 2 Cir. 5/15/13), 114 So.3d 1194, 1206.

5

A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.

(2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.

(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.

. . . . .

(3) The implementation order shall allocate the legal authority and responsibility of the parents.

B. (1) In a decree of joint custody the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown.

(2) The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents.

(3) The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child.

C. If a domiciliary parent is not designated in the joint custody decree and an implementation order does not provide otherwise, joint custody confers upon the parents the same rights and responsibilities as are conferred on them by the provisions of Title VII of Book I of the Civil Code.

The plain language of La. R.S. 9:335 manifests the legislature's clear intent to establish a custodial system in which a child has a domiciliary parent and no more than one such parent. The text is clear. Although each parent can share physical custody, the court can only designate a single domiciliary parent. **Hodges v. Hodges**, 2015-0585 (La. 11/23/15), 181 So.3d 700, 706. Therefore, we reverse the trial court's designation of Mr. Boudreaux and Ms. Webster as co-domiciliary parents. Accordingly, we remand the matter to the trial court for a prompt hearing and determination of a domiciliary parent unless there is an implementation order to

the contrary or for other good cause shown. La R.S. 9:335(B); **Hodges**, 181 So.3d 711-712.

**ASSIGNMENTS OF ERROR NUMBERS THREE AND FOUR**

In assignments of error numbers three and four, Mr. Boudreaux maintains that the trial court legally erred in failing to determine whether a material change in circumstances warranting a modification of the present custody arrangement had occurred since the original custody decree, and legally erred or abused its discretion in modifying the custodial exchanges of Wyatt and making a determination of daycare during Mr. Boudreaux's custodial periods.

A trial court's determination regarding child custody will not be disturbed absent a clear abuse of discretion. **Martello v. Martello**, 2006-0594 (La. App. 1 Cir. 3/23/07), 960 So.2d 186, 191-92. The best interest of the child is the sole criterion to be met in making a custody award, as the trial court sits as a sort of fiduciary on behalf of the child and must pursue actively that course of conduct which will be of the greatest benefit to the child. **C.M.J. v. L.M.C.**, 2014-1119 (La. 10/15/14), 156 So.3d 16, 28, citing **Turner v. Turner**, 455 So.2d 1374, 1378 (La. 1984). It is the child's emotional, physical, material and social well-being and health that are the court's very purpose in child custody cases; the court must protect the child from the real possibility that the parents are engaged in a bitter, vengeful, and highly emotional conflict. The legislature has mandated that the court look only to the child's interests so that the court can fulfill its obligations to the child. **Hodges**, 181 So.3d at 702.

The factors to be used in determining the best interest of the child are set out in La. C.C. art. 134, which provides in pertinent part:

> A. Except as provided in Paragraph B of this Article, the court shall consider all relevant factors in determining the best interest of the child, including:

7

(1) The potential for the child to be abused, as defined by Children's Code Article 603, which shall be the primary consideration.

(2) The love, affection, and other emotional ties between each party and the child.

(3) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

(4) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(5) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(6) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(7) The moral fitness of each party, insofar as it affects the welfare of the child.

(8) The history of substance abuse, violence, or criminal activity of any party.

(9) The mental and physical health of each party. Evidence that an abused parent suffers from the effects of past abuse by the other parent shall not be grounds for denying that parent custody.

(10) The home, school, and community history of the child.

(11) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(12) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party, except when objectively substantial evidence of specific abusive, reckless, or illegal conduct has caused one party to have reasonable concerns for the child's safety or well-being while in the care of the other party.

(13) The distance between the respective residences of the parties.

(14) The responsibility for the care and rearing of the child previously exercised by each party.

The trial court determined that Wyatt shall attend a daycare/preK-3 in Morgan City while his parents have 50-50 rotating weekly custody and live one hour away from each other. The result is that Wyatt has a minimum daily one-hour trip each

8

way to and from a Morgan City daycare/preK-3 every other week giving Mr. Boudreaux less than 50-50 physical custody of Wyatt. While the trial court has vast discretion in deciding matters of child custody and visitation, we find that this excessive travel is not in Wyatt's best interest, and that the trial court abused its discretion in ordering that the parties shall meet in the morning and after school each day during Mr. Boudreaux's physical custody week to exchange Wyatt for daycare/preK-3.[5] Therefore, we amend the judgment to order that Mr. Boudreaux shall not be required to send Wyatt to daycare/preK-3 on the days Wyatt resides primarily with him. Mr. Boudreaux remains responsible for his equal share of the daycare/preK-3 expenses as provided for in the trial court judgment.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's designation of Lance Boudreaux and Carley Webster as co-domiciliary parents, we amend the judgment to order that Lance Boudreaux shall not be required to send Wyatt to daycare/preK-3 on the days Wyatt resides primarily with him. We remand the case for a prompt hearing for the determination of a domiciliary parent or an implementation order in accordance with La. R.S. 9:335. In all other aspects, the trial court judgment is affirmed. Costs of this appeal are assessed against Carley Webster.

**REVERSED IN PART, AMENDED IN PART, AFFIRMED IN PART, AND REMANDED.**

---

[5] We note that Mr. Boudreaux has free child care from his parents while he is working. Further, we note that preK attendance is not mandated by the State. See La. R.S. 17:221.

9